Society Insurance, Plaintiff-Respondent,

v.

Rich Bodart d/b/a Bodart Landscaping & Lawn Service, Defendant-Appellant,

Synergetic Marketing Sales, Inc., Defendant.

Court of Appeals

*No. 2010AP2442. Submitted on briefs October 12, 2011. —Decided June 7, 2012.*

2012 WI App 75

(Also reported in 819 N.W.2d 298.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey J. Guerard* of *Guerard Law LLC*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James W. Mohr, Jr.*, of *Mohr & Anderson, LLC*, Hartford.

Before Higginbotham, Sherman and Blanchard, JJ.

¶ 1. BLANCHARD, J.   Rich Bodart appeals a circuit court order denying his motion for contempt against his insurer, Society Insurance. The underlying question is whether Society had a continuing duty to defend Bodart after the only arguably covered claim in a lawsuit against Bodart was settled and dismissed, leaving only non-covered claims. The parties agree that no Wisconsin case decides this question. We conclude, based on the terms of the insurance policy and on a rule that is consistently cited in persuasive authority, that Society did not have a continuing duty to defend Bodart under the circumstances of this case. We therefore affirm the circuit court's order.

## BACKGROUND

¶ 2.   The pertinent facts are straightforward and undisputed for purposes of this appeal. A civil lawsuit alleging five claims against Bodart was filed in Michigan. The nature and merits of the claims in the Michigan action are not relevant to any issue presented in this appeal.

¶ 3.   Society filed this separate action in Wisconsin, seeking a declaration regarding its duty to defend Bodart in the Michigan action. The circuit court concluded in an order (hereinafter, "duty-to-defend order") that Bodart's policy with Society provided at least arguable coverage for one of the five claims in the Michigan action and that Society therefore had a duty to defend against the Michigan action.[1]

[1] An insurer has a duty to defend even when there is only "arguable," as opposed to "actual," coverage. *See, e.g., Fireman's Fund Ins. Co. v. Bradley Corp.*, 2003 WI 33, ¶ 20, 261 Wis. 2d 4,

¶ 4. Following this order, Society assumed the defense. It proceeded to settle three of the five claims, including the only claim that the circuit court had concluded was at least arguably covered. Society obtained a release as part of the settlement, and the settled claims were dismissed from the Michigan action.

¶ 5. Society sent Bodart a letter informing him that, in light of the settlement and dismissal, it would withdraw its defense as to the remaining two claims. Society's letter stated: "Since, according to the [duty-to-defend order], Society has now settled the only covered claim against you, together with two other claims which were not covered, Society will no longer be furnishing a defense to you in the Michigan action." In response, Bodart filed a motion for contempt in this action, asserting that Society's unilateral decision to withdraw its defense violated the duty-to-defend order.

¶ 6. In addressing the contempt motion, the circuit court concluded that Society no longer had a duty to defend Bodart and therefore denied Bodart's motion. The court also concluded that, even if Society had "perhaps" violated the court's duty-to-defend order by deciding to withdraw without court permission, that possible violation was "cured" when the court heard Bodart's contempt motion and concluded that Society no longer had a duty to defend as a result of the settlement and dismissal. Bodart now appeals the order denying his motion for contempt.

660 N.W.2d 666. The distinction between the two arises because of the rule that the duty to defend is determined based on the allegations in the underlying complaint, regardless whether those allegations turn out to be true. *See id.*, ¶¶ 19, 21.

## DISCUSSION

¶ 7.   A circuit court's contempt decision is discretionary and will be affirmed if the court reached a reasonable decision after applying the proper legal standards to the relevant facts. *See Benn v. Benn*, 230 Wis. 2d 301, 308, 602 N.W.2d 65 (Ct. App. 1999). Here, the reasonableness of the court's contempt decision turns on the scope of Society's duty to defend, a question of law that we review de novo. *See Estate of Sustache v. American Family Mut. Ins. Co.*, 2008 WI 87, ¶ 18, 311 Wis. 2d 548, 751 N.W.2d 845. More specifically, the dispositive question is whether Society had a continuing duty to defend Bodart after the only arguably covered claim against Bodart was settled and dismissed, leaving only non-covered claims. For the following reasons, we conclude that it did not.

¶ 8.   The duty to defend is a contractual obligation of the insurer. *Johnson Controls, Inc. v. London Market*, 2010 WI 52, ¶ 28, 325 Wis. 2d 176, 784 N.W.2d 579; *see also Novak v. American Family Mut. Ins. Co.*, 183 Wis. 2d 133, 137, 515 N.W.2d 504 (Ct. App. 1994). We will therefore consider any relevant policy terms addressing Society's duty to defend. We construe policy terms as they would be understood by a reasonable insured. *Estate of Sustache*, 311 Wis. 2d 548, ¶ 19.

¶ 9.   In addition, determining the scope of an insurer's duty to defend often requires the consideration of rules which, while not express in the insurance policy, are well established in case law. One such rule, as previously referenced, is that an insurer's duty to defend is determined based on the allegations in the

underlying complaint. *See, e.g., Olson v. Farrar,* 2012 WI 3, ¶¶ 29–32 & n.5, 338 Wis. 2d 215, 809 N.W.2d 1; *Fireman's Fund Ins. Co. v. Bradley Corp.,* 2003 WI 33, ¶ 19, 261 Wis. 2d 4, 660 N.W.2d 666.

■■

¶ 10.   Consistent with this approach, we will consider pertinent rules in the case law as well as any applicable policy language. We start with the policy language, then turn to the case law. We agree with Society that both support the circuit court's decision.

¶ 11.   Bodart fails to discuss any policy language. However, as Society explains, there is at least one relevant provision. That provision gives the insurer discretion to settle claims and provides notice to the insured that the insurer "will have no duty to defend the insured against any 'suit' . . . to which this insurance does not apply."[2] Under this policy language, there is no duty to defend a "suit" when insurance coverage does not apply to the "suit."

¶ 12.   It is true that this provision does not expressly address the particular question of whether Society's duty might continue when the only arguably

---

[2] The record does not contain a copy of the policy, but there appears to be no dispute that the following language, as supplied by Society, is the pertinent language and is accurate:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. *However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage" or "personal and advertising injury," to which this insurance does not apply.* We may[,] at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(Emphasis added.)

covered claim has been settled and dismissed. In this respect, the policy language could be said to be silent on that question. We conclude, however, that a reasonable insured would understand this language as Society does, to mean that Society has no duty to defend an insured in a suit once it has become clear that the suit no longer involves any claim that is even arguably covered. Stated another way, once all at least arguably covered claims are settled and dismissed, those claims are no longer part of the suit, and the insurance no longer applies to that suit.

¶ 13.   Turning to case law, the parties agree that no Wisconsin case has decided the precise question of whether an insurer has a continuing duty to defend remaining claims after all at least arguably covered claims are settled and dismissed. However, we now discern from the parties' briefing and our own research that the general rule consistently reflected in persuasive authority is this:   An insurer's duty to defend ends after all at least arguably covered claims are settled and dismissed. *See, e.g., Lockwood Int'l, B.V. v. Volm Bag Co.*, 273 F.3d 741, 744 (7th Cir. 2001) ("[I]f in the course of litigation the covered claims fall out of the case through settlement . . ., the insurer's duty to defend [the] insured ceases."); *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 417 (Minn. 1997) ("Once the insurer settled and paid [the covered] claims, it . . . completely performed its contractual duty."); ALLAN D. WINDT, INSURANCE CLAIMS & DISPUTES § 4:28 (5th ed. 2007) (generally an insurer may withdraw its defense if "the insurer enters into a settlement with the plaintiff pursuant to which the plaintiff dismisses those claims encompassed by the policy—even though the lawsuit continues as to the noncovered claims"); *see also* LEE R. RUSS & THOMAS F. SEGALLA, 9 COUCH ON INSURANCE § 200:49

425

(3d ed. 2005) ("An insurer's duty to defend continues until final resolution of the covered claims.").

¶ 14. We have located no authority, nor has Bodart provided any authority, to the contrary. Bodart relies on *City of Hartsville v. South Carolina Municipal Insurance & Risk Financing Fund*, 677 S.E.2d 574 (S.C. 2009), but that case is consistent with, not contrary to, the general rule. In *City of Hartsville*, the court concluded that at least some of the allegations remaining after dismissal of a purportedly covered claim could themselves constitute a covered claim. *See id.* at 576–77, 579–82. Thus, *City of Hartsville* presents a different fact situation and stands for a rule that the duty to defend continues as long as any allegations that constitute an at least arguably covered claim remain pending. That rule, in turn, is consistent with the general rule set forth above that the duty ends once all at least arguably covered claims are settled and dismissed.[3]

¶ 15. In addition, we are persuaded that the general rule from persuasive authority is consistent with several well-established rules in Wisconsin case law, as summarized in the following paragraphs.

---

[3] Bodart asserts in a single sentence, without citation to the record or further explanation, that one of the remaining claims in this case includes allegations of "some of the same facts" that formed the basis for the arguably covered claim. However, an overlap in allegations does not necessarily establish that the remaining claim is at least arguably covered. Without further explanation, Bodart's argument is not persuasive. Moreover, Bodart's argument comes too late because, to the extent it could be correct, it runs directly contrary to the circuit court's duty-to-defend order, in which the court concluded that only one of the original five claims was even arguably covered under the policy, and Bodart did not appeal this order.

¶ 16.   An insurer's duty to defend is determined based on the allegations in the underlying complaint, construed liberally. *See, e.g., Olson*, 338 Wis. 2d 215, ¶¶ 29–30 & n.5; *Fireman's Fund*, 261 Wis. 2d 4, ¶¶ 19–20. Consistent with this rule, once all covered (and arguably covered) claims have been settled and dismissed, there are no longer any allegations in the complaint that are arguably covered, no matter how liberally construed.

¶ 17.   Any doubt regarding the duty to defend is resolved in favor of the insured. *See, e.g., Olson*, 338 Wis. 2d 215, ¶ 29; *Fireman's Fund*, 261 Wis. 2d 4, ¶ 20. Consistent with this rule, once all covered (and arguably covered) claims have been settled and dismissed, all doubt has been resolved against the insurer's duty to defend.

¶ 18.   "The insurer is under an obligation to defend only if it could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint . . . ." *Olson*, 338 Wis. 2d 215, ¶ 29 (quoting *Grieb v. Citizens Cas. Co.*, 33 Wis. 2d 552, 558, 148 N.W.2d 103 (1967)). Consistent with this rule, once all covered (and arguably covered) claims have been settled and dismissed, the insured could no longer be held bound to indemnify the insured.

¶ 19.   The duty to defend extends to the "entire suit" against an insured, even if only one claim in the suit is covered. *See, e.g., Fireman's Fund*, 261 Wis. 2d 4, ¶ 21; *Doyle v. Engelke*, 219 Wis. 2d 277, 285 n.4, 580 N.W.2d 245 (1998). Consistent with this rule, once all

covered (and arguably covered) claims have been settled and dismissed, there is no longer even one covered claim in the suit. We note that Bodart points to no Wisconsin case or analogous case from any other jurisdiction applying the "entire suit" rule after all covered claims have been settled and dismissed.

¶ 20. Further, the general rule is consistent with the oft-stated principle that we do not construe insurance policies to cover risks that the insurer did not contemplate and for which the insurer has not received a premium. *See, e.g., Estate of Sustache*, 311 Wis. 2d 548, ¶ 19; *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 673 N.W.2d 65. Adopting Bodart's position here would establish a rule that requires insurers to continue to defend insureds even when it has become clear that there could not possibly be coverage for any remaining allegations. As the Minnesota Supreme Court explains in *Meadowbrook*: "To require an insurer who undertakes a defense on the basis of arguably covered claims to remain in the litigation even after those claims have been resolved, is to force the insurer to defend claims not arguably covered by the policy." *Meadowbrook*, 559 N.W.2d at 416.

¶ 21. As the *Meadowbrook* court further explains, a contrary rule would result in a perverse incentive for insurance companies to litigate questions of coverage more aggressively, counter to the general interests of their insureds and adding costs for all involved: "Such a [contrary] rule also would encourage insurers to avoid defending lawsuits that actually include arguably covered claims. The result would be an increase in declaratory judgment actions brought by insureds to force insurers to perform their contractually mandated duties." *Id.*

¶ 22. For all of these reasons, we adopt the general rule. However, we hasten to add that the persuasive authority on which we rely includes exceptions to that rule. At a minimum, these sources suggest that the rule may not apply when the insurer's withdrawal from the action would prejudice the insured's defense of the remaining, non-covered claims, *see* 9 COUCH ON INSURANCE § 200:52,[4] or when the insurer has purported to "settle" claims out of a case but has done so in bad faith, *see Lockwood*, 273 F.3d at 744–46.

¶ 23. Here, we need not address the exceptions established in other jurisdictions in any detail, because Bodart provides us with no basis to conclude that any potential exception that is, or should be, a part of Wisconsin law applies here. He asserts that his situation is like the bad faith case of *Lockwood*, but points to no evidence supporting that assertion. The facts of *Lockwood* involve the extreme circumstance of a "contrived complaint." In *Lockwood*, the insurer paid $1.5 million to the plaintiff to file an amended complaint omitting all covered claims, without consulting the insured, and colluded with the plaintiff in re-writing the complaint "line by line." *Id.* at 744. Nothing in the record suggests that Society in this case engaged in anything resembling a "conspicuous betrayal of the insurer's fiduciary duty to its insured" by agreeing "with its insured's adversary to contrive a complaint that

---

[4] Examples of prejudice to the insured justifying an exception to the general rule cited by this authority would include withdrawal at a time or under circumstances that undermine the ability of the insured to produce a material witness or to otherwise adequately prepare his or her defense to the remaining claims. *See* LEE R. RUSS & THOMAS F. SEGALLA, 9 COUCH ON INSURANCE § 200:52, 55 (3d ed. 2005).

429

would eliminate any remaining contractual obligation of the insurance company to defend the insured." *See id.*

¶ 24. Accordingly, we apply the general rule and conclude, as the circuit court did, that Society no longer had a duty to defend Bodart after Society settled the only arguably covered claim and that claim was dismissed. Under this general rule, Society was permitted to withdraw its defense at that time.

¶ 25. Bodart argues that, even if Society's duty to defend ended with settlement and dismissal of the only covered claim, the circuit court nonetheless should have found Society in contempt for unilaterally deciding to withdraw instead of seeking advance court permission. So far as we can discern, there are two aspects to Bodart's argument in this respect. As we explain below, neither is persuasive.

¶ 26. First, Bodart argues that, even if Society's duty to defend ended with settlement and dismissal of the only covered claim, the court should have held Society in contempt for failing to seek court approval before withdrawing, consistent with the procedures insurers are encouraged to follow—and that Society followed here in filing this action—when initially contesting their duty to defend at an earlier stage of proceedings. *See, e.g., Liebovich v. Minnesota Ins. Co.*, 2008 WI 75, ¶ 55, 310 Wis. 2d 751, 751 N.W.2d 764; *Baumann v. Elliott*, 2005 WI App 186, ¶ 8, 286 Wis. 2d 667, 704 N.W.2d 361; *Grube v. Daun*, 173 Wis. 2d 30, 75, 496 N.W.2d 106 (Ct. App. 1992).[5] However, even assum-

---

[5] The court in *Baumann v. Elliott*, 2005 WI App 186, ¶ 8, 286 Wis. 2d 667, 704 N.W.2d 361, summarized the procedures as follows:

(1) [An insurer] may seek a declaratory judgment; (2) it may enter into an agreement with the insured to defend while retaining the

ing that insurers should be strongly encouraged to follow analogous procedures at later stages of proceedings, such as the one the parties faced here, Bodart acknowledges that such procedures are not mandatory. *See Liebovich*, 310 Wis. 2d 751, ¶ 55.[6] We see no reason why Society's failure to follow a non-mandatory procedure required the circuit court to find Society in contempt, and Bodart does not point to any facts otherwise showing that the discretionary contempt decision here was unreasonable.

¶ 27. In a second, related argument, Bodart contends that, again even if Society's duty to defend ended with settlement and dismissal of the only covered claim, the court erred in failing to find Society in contempt of the court's duty-to-defend order, because by its terms the order required Society to defend the entire suit until Society sought and received court permission to withdraw, and Society withdrew without first being relieved of its duty by the court pursuant to a new order. We disagree that the order imposed this requirement. Although the order provided that Society

right to challenge coverage; (3) similarly, it may afford a defense under a reservation of rights[;] . . . (4) finally, it may seek a bifurcated trial, in which the court decides the coverage issue in a separate action from the action on the merits of the complaint.

[6] The court in *Liebovich v. Minnesota Insurance Co.*, 2008 WI 75, ¶ 55, 310 Wis. 2d 751, explained the non-mandatory nature of the procedures as follows:

While these procedures are not absolute requirements, we strongly encourage insurers wishing to contest liability coverage to avail themselves of one of these procedures rather than unilaterally refuse to defend. A unilateral refusal to defend without first attempting to seek judicial support for that refusal can result in otherwise avoidable expenses and efforts to litigants and courts, deprive insureds of their contracted-for protections, and estop insurers from being able to further challenge coverage.

431

had a duty to defend the "suit" against Bodart, based on the only arguably covered claim, the order was silent on the question of whether Society's duty to defend would continue if that claim was settled and dismissed, and on the question of whether Society needed to seek permission from the court to withdraw its defense in such a situation. Thus, in denying Bodart's contempt motion, the circuit court reasonably focused on what the law required, rather than any particular language in the order.

¶ 28. Moreover, as indicated above, the circuit court concluded that, even if Society had "perhaps" violated the duty-to-defend order by unilaterally deciding to withdraw, Society's possible violation of the order was "cured" once the court heard Bodart's contempt motion and concluded that Society no longer had a duty to defend after the arguably covered claim was settled and dismissed. Bodart develops no argument explaining why the court was required to find Society in contempt even though any possible violation was "cured," or why it was not a reasonable decision to conclude that the contempt was in fact "cured."[7]

---

[7] Among its arguments, Society contends that the circuit court found no contempt in part because Society did not actually withdraw its defense of Bodart before the time of the contempt hearing, despite Society's earlier letter to Bodart stating that Society "will no longer be furnishing a defense." This argument is difficult to square with the circuit court's observation that "perhaps" Society violated the duty-to-defend order by unilaterally deciding to withdraw and sending the letter to Bodart. Regardless, we need not and do not rely on this argument of Society's because our discussion in the text above is sufficient to uphold the circuit court's decision.

## CONCLUSION

¶ 29. In sum, for all of the reasons stated, we conclude that the circuit court properly exercised its discretion in denying Bodart's motion for contempt. Accordingly, we affirm the court's order denying that motion.

*By the Court.*—Order affirmed.