PER CURIAM.
¶1 The Town of Forest ("the Town") appeals an order denying its motion to hold the Public Service Commission of Wisconsin ("the PSC") in contempt of court. The Town also appeals an order dismissing its petition for judicial review of the PSC's decision granting a certificate of public convenience and necessity to Highland Wind Farm, LLC, ("Highland") for the construction of an industrial wind energy facility. We conclude the circuit court properly exercised its discretion by denying the Town's contempt motion. We further conclude the court properly dismissed the Town's petition for judicial review on the ground that it was barred by the doctrine of claim preclusion. We therefore affirm.
BACKGROUND
¶2 On December 19, 2011, Highland applied to the PSC for a certificate of public convenience and necessity permitting Highland to construct a 102.5 megawatt wind energy facility on land located, in part, within the Town. An administrative law judge subsequently granted the Town's request to intervene in the administrative proceedings pertaining to Highland's application. On March 15, 2013, the PSC issued a final decision denying Highland's application. Based on computer modeling submitted by Highland, the PSC determined that Highland's proposed facility would exceed the nighttime noise limit of 45 dBA[1] set forth in WIS. ADMIN. CODE § PSC 128.14(3)(a) (Dec. 2012),[2] for between twenty and forty-five nearby, nonparticipating residences.
¶3 Thereafter, Highland successfully petitioned the PSC to reopen its March 15, 2013 decision. In the reopened proceeding, Highland proposed implementing a compliance plan that would include "curtailment of certain turbines by operating them in reduced noise operation modes in order to meet applicable noise limits." Highland asserted its use of curtailment would allow the project to meet the applicable noise limits in WIS. ADMIN. CODE § PSC 128.14(3) and was, in fact, "the only way to meet the nighttime [noise] standard." In response, the Town argued curtailment "may only be used as a mitigation tool" once a project is operational and may not be relied upon in the planning phase as a way to ensure initial compliance with the applicable noise limits.
¶4 On October 25, 2013, the PSC issued a "Final Decision on Reopening," which approved Highland's application for a certificate of public convenience and necessity. The PSC found, based on Highland's sound level modeling and proposed curtailment plan, that Highland's project would meet the noise limits in WIS. ADMIN. CODE § PSC 128.14(3), including the nighttime noise limit of 45 dBA. Although the PSC appeared to agree with Highland that WIS. ADMIN. CODE ch. PSC 128 permitted the use of curtailment in the planning phase of the project, the PSC ultimately stated it was "not necessary" to address that issue because the PSC was only required to "consider" the provisions of ch. PSC 128 when evaluating Highland's application. The PSC then concluded curtailment was an "appropriate planning strategy without regard to the rules" in ch. PSC 128.
¶5 The PSC's final decision on reopening imposed two conditions on Highland's project that are relevant to this appeal. First, the PSC held that "a showing of compliance by Highland at or above 95 percent of the time" would be "adequate for the [PSC] to consider the proposed project in compliance with applicable noise limits." Second, the PSC "accept[ed] Highland's voluntary agreement to obligate itself to a lower limit of 40 dBA" during nighttime hours for six residences occupied by individuals with sensitivities to sound. However, the PSC found it was "not necessary" to extend the 40 dBA nighttime noise limit to "additional affected residences identified in the reopened proceeding."
¶6 Commissioner Ellen Nowak dissented from the PSC's decision. She concluded WIS. ADMIN. CODE ch. PSC 128 did not contemplate "the type of curtailment plan proposed by Highland as a method for permanent compliance with sound limits." She further concluded that Highland's proposed use of curtailment would "undermine[ ] the sound limits that were discussed at length and vetted by the Wind Siting Council."[3]
¶7 The Town petitioned for judicial review of the PSC's final decision on reopening. Among other things, the Town argued that: (1) the PSC made material errors of law and fact when it held that Highland's project needed to comply with the applicable noise limitations only 95% of the time; (2) the PSC's finding that there was no basis to apply a 40 dBA nighttime noise limit to additional sensitive residences was not supported by substantial evidence; and (3) substantial evidence did not support the PSC's finding that Highland's curtailment plan was sufficient to ensure compliance with the applicable noise limits.
¶8 The circuit court, the Honorable Edward F. Vlack III presiding, ultimately issued a 115-page decision on the Town's petition for judicial review. The parties refer to that decision as Town of Forest I . As relevant here, the court held that the record did not contain sufficient evidence to support the PSC's determination that Highland needed to comply with the applicable noise limits only 95% of the time. The court therefore set aside that portion of the PSC's decision adopting a 95% compliance standard and remanded the matter to the PSC "for the purpose [of] conducting a further hearing on the issue of adopting a percentage compliance standard."
¶9 The circuit court also concluded that the PSC's decision to apply a lower nighttime noise limit to only six sensitive residences was not supported by substantial evidence. The court therefore remanded the proceeding to the PSC with directions to explain, based on the existing record, why it had applied the lower nighttime noise limit to only six residences and not to eleven additional residences. The court further held:
If, based upon the record herein, the [PSC] is not able to state why the six residences were selected and the other eleven were not, then the matter is reopened solely for the purpose of allowing the parties to state why other sensitive residences, already identified, should be considered and the [PSC] can then decide if others, already identified, should be included with the original six residences.
¶10 Finally, the circuit court held that there was sufficient evidence in the record to support the PSC's finding that Highland's curtailment plan would ensure compliance with the applicable noise limits. The court therefore affirmed that portion of the PSC's decision approving Highland's use of a curtailment plan.
¶11 No party appealed the circuit court's decision in Town of Forest I . On March 15, 2016, the PSC issued an order reopening the proceeding "for the limited purpose" of addressing the two issues remanded by the circuit court. The PSC stated it was exercising its authority to reopen the matter under WIS. STAT. § 196.39(1) (2015-16),[4] which states the PSC may "at any time, upon notice to the public utility and after opportunity to be heard, ... reopen any case following the issuance of an order in the case, for any reason."
¶12 The PSC's order reopening the proceeding notified the parties that the PSC intended to modify its prior decision "to remove the pre-established 95 percent compliance standard and address any complaints concerning alleged noncompliance with the noise standards, based on the specific factual situation, at the time any noncompliance is alleged." (Footnote omitted.) The order also stated the PSC would "reopen[ ] the record" to allow the parties "to state why the six identified potentially sensitive residences, and other potentially sensitive residences already identified ... should be considered for lower noise requirements ... so that the [PSC] can decide whether to include lower noise requirements for either these six or any additional residences." The PSC provided a thirty-day period during which the parties and members of the public could submit comments on these issues. During that period, the PSC received and considered comments from Highland, the Town, several other intervenors, and more than 130 members of the public.
¶13 The PSC subsequently issued its "Final Decision on Remand" on August 11, 2016. The PSC observed that the "sole purpose" of its decision was to address the "two specific issues remanded by the circuit court"-namely, the 95% compliance standard, and the lower nighttime noise limit. With respect to the first issue, the PSC found it was "reasonable to remove the pre-established 95 percent compliance standard and address any complaints concerning alleged noncompliance with the noise standards, based on the specific factual situation, at the time any noncompliance is alleged." As for the second issue, after reviewing the additional evidence submitted on remand, the PSC found it was "reasonable to require Highland to comply with the noise limits in WIS. ADMIN. CODE § PSC 128.14(3) for all nonparticipating residences in the project area," but it was "not reasonable to require Highland to provide a noise limit lower than that specified in ... § PSC 128.14(3) to either the six previously identified residences or any other identified residences in the project area." The PSC stated the record did not contain substantial evidence "to support a lower noise standard for any of the identified residences."
¶14 The PSC also addressed and rejected the Town's argument that, pursuant to the circuit court's decision in Town of Forest I , the PSC was required to hold a hearing regarding the two remanded issues. The PSC reasoned the circuit court's directive to hold a hearing "on the issue of adopting a percentage compliance standard" applied only if a percentage compliance standard was, in fact, adopted. Because the PSC had decided to eliminate its previously adopted percentage compliance standard, it concluded no hearing on that issue was required. As for the issue of whether to impose a lower noise standard for certain sensitive residences, the PSC concluded no hearing was necessary because its decision to remove the lower standard for the six residences identified in its prior decision was consistent with the circuit court's finding that the PSC had adopted the lower standard "without substantial evidence on the record."
¶15 Finally, the PSC declined to address the Town's arguments regarding the propriety of Highland's proposed curtailment plan. The PSC explained:
In the Final Decision on Reopening, the [PSC] specifically concluded that curtailment is an appropriate strategy to meet the noise limits, and Highland's proposed curtailment plan ensured compliance with the applicable daytime and nighttime noise limits. Upon judicial review, the circuit court upheld the [PSC's] determination holding that "there is substantial evidence in the record for the [PSC] to conclude that Highland's curtailment plan ensured compliance. The Town, the [PSC] and Highland all point to exhibits and testimony that directly address the issue of the ability of the curtailment plan to comply with applicable standards. The Town may not like the conclusion that was reached, but the conclusion the [PSC] reached was clearly supported by substantial evidence in the record." The Town did not appeal this determination. Thus, the curtailment plan is not an issue in this proceeding, and the [PSC] rejects the Town['s] ... belated and improper attempt to re-litigate that issue as part of these limited reopened proceedings on remand.
(Citations omitted.)
¶16 The Town took two actions in response to the PSC's final decision on remand. First, under the same case number as its petition for judicial review of the PSC's prior decision, the Town filed a motion for non summary, remedial contempt of court. The Town argued the PSC had failed to comply with the circuit court's order in Town of Forest I by failing to hold a hearing regarding the adoption of a percentage compliance standard and by removing the lower nighttime noise limit for the six sensitive residences identified in the PSC's prior decision. As a sanction, the Town asked the circuit court to order the PSC to: (1) reinstate the lower nighttime noise limit for the six sensitive residences; and (2) hold a hearing on whether the lower limit should also be applied to other, previously identified residences.
¶17 Second, under a separate case number, the Town filed a petition for judicial review of the PSC's final decision on remand. The Town's sole argument in the petition was that the PSC had erred by concluding curtailment could be used in the planning phase of Highland's project to ensure compliance with the applicable noise limits.
¶18 The PSC filed briefs in opposition to the Town's contempt motion. It also moved to dismiss the Town's petition for judicial review, on the grounds that the petition failed to state a claim on which relief could be granted and was barred by the doctrine of claim preclusion. On October 21, 2016, the Honorable Scott R. Needham held a hearing on the PSC's motion to dismiss. One month later, Judge Vlack held a hearing on the Town's contempt motion. Judge Vlack and Judge Needham subsequently issued an order consolidating the two cases for purposes of disposition, and the consolidated cases were assigned to Judge Vlack.[5]
¶19 The circuit court ultimately issued an order denying the Town's contempt motion. Approximately two months later, it entered an order granting the PSC's motion to dismiss the Town's petition for judicial review, on the ground that the petition was barred by the doctrine of claim preclusion. The Town now appeals from both of those orders.
DISCUSSION
I. The Town's contempt motion
¶20 "A circuit court's contempt decision is discretionary and will be affirmed if the court reached a reasonable decision after applying the proper legal standards to the relevant facts." Society Ins. v. Bodart , 2012 WI App 75, ¶7, 343 Wis. 2d 418, 819 N.W.2d 298. In this appeal, both parties have devoted significant portions of their briefs to disputing whether the circuit court had legal authority to hold the PSC in contempt. However, it is ultimately unnecessary for us to address that issue. Assuming without deciding that the court had authority to hold the PSC in contempt, we nevertheless conclude the court properly exercised its discretion by denying the Town's contempt motion.
¶21 Contempt of court is defined, in relevant part, as "intentional ... [d]isobedience, resistance or obstruction of the authority, process or order of a court." WIS. STAT. § 785.01(1)(b). In support of its contempt motion, the Town argued the PSC had disobeyed the circuit court's order in Town of Forest I by failing to hold a hearing on the percentage compliance standard and by removing the lower nighttime noise limit for the six sensitive residences identified in the PSC's prior decision. The Town asked the circuit court to impose a remedial sanction-that is, a sanction "imposed for the purpose of terminating a continuing contempt of court." See § 785.01(3). Specifically, the Town asked the court to order the PSC to reinstate the lower nighttime noise limit for the six sensitive residences and to hold a hearing on whether the lower limit should also be applied to other, previously identified residences. The Town requested no relief related to the PSC's failure to hold a hearing on the percentage compliance standard.
¶22 The circuit court reasonably concluded, however, that holding the PSC in contempt would serve no real purpose under the circumstances. In Town of Forest I , the court found that the PSC had adopted the 95% compliance standard without substantial evidence in the record to support it. The court therefore set aside the 95% compliance standard and remanded the matter to the PSC "for the purpose [of] conducting a further hearing on the issue of adopting a percentage compliance standard." On remand, the PSC did not hold a hearing regarding the adoption of a percentage compliance standard. Instead, it informed the parties that it intended to modify its prior decision "to remove the pre-established 95 percent compliance standard and address any complaints concerning alleged noncompliance with the noise standards, based on the specific factual situation, at the time any noncompliance is alleged." (Footnote omitted.) Following a thirty-day public comment period, the PSC issued its final decision on remand, which removed the 95% compliance standard.
¶23 Although the PSC did not hold a hearing on the issue of the 95% compliance standard, the practical reality is that the PSC's final decision on remand accomplished what the circuit court intended in Town of Forest I -namely, it removed a condition that the court had already determined was not supported by sufficient evidence. Moreover, as the PSC points out, Town of Forest I merely required the PSC to hold a further hearing "on the issue of adopting a percentage compliance standard." (Emphasis added.) It did not state the PSC needed to hold a hearing in order to remove that standard. Under these circumstances, the circuit court reasonably concluded that "judicial efficiency and judicial rationality" did not support holding the PSC in contempt for failing to hold a hearing regarding the 95% compliance standard.
¶24 As for the PSC's decision to remove the lower nighttime noise limit for six sensitive residences, again, that action complied with the spirit of the circuit court's order in Town of Forest I . There, the court concluded the PSC's decision to adopt the lower nighttime noise limit was not supported by substantial evidence in the record. On remand, after taking additional evidence on the issue, the PSC determined the record did not support imposing a lower nighttime noise limit for any residences. As the circuit court later noted in its decision denying the Town's contempt motion, the PSC's final decision on remand "actually agreed" with the court that the evidence did not support its prior decision to impose a lower nighttime noise limit. Thus, the PSC's actions on remand-even if they did not strictly comply with the letter of the court's order in Town of Forest I -essentially conformed to the court's intent. On these facts, the circuit court reasonably exercised its discretion by declining to hold the PSC in contempt of court.
¶25 In addition, although the circuit court found that the PSC "willfully" failed to comply with the court's order in Town of Forest I , the court did not cite any evidence supporting that finding. The Town similarly fails to cite any evidence on appeal demonstrating that the PSC willfully violated the court's order. The mere failure to comply with a court order is an insufficient basis to hold a party in contempt. See Benn v. Benn , 230 Wis. 2d 301, 309, 602 N.W.2d 65 (Ct. App. 1999). There must instead be some showing that the party's failure to comply with the order was intentional. See id. at 309-10 ; see also WIS. STAT. § 785.01(1). Accordingly, absent a showing in this case that the PSC intentionally disobeyed the circuit court's order in Town of Forest I , the court could not properly hold the PSC in contempt. Moreover, the record here shows that the PSC did not enter its order without a hearing because it willfully chose not to hold a hearing or permit public input. Instead, it determined it could accomplish what the circuit court intended on remand without the necessity of a hearing. Furthermore, in reopening its decisions regarding the 95% compliance standard and the imposition of a lower nighttime noise limit, the PSC acted within its authority under WIS. STAT. § 196.39(1), which allows the PSC to reopen a prior order at any time, for any reason.
¶26 For all of the foregoing reasons, we conclude the circuit court did not erroneously exercise its discretion by refusing to hold the PSC in contempt of court. We therefore affirm the court's order denying the Town's contempt motion.
II. The Town's petition for judicial review
¶27 The Town next contends the circuit court erred by dismissing its petition for judicial review of the PSC's final decision on remand, on the ground that the petition was barred by the doctrine of claim preclusion. Whether claim preclusion applies under a given factual scenario is a question of law that we review independently. Wisconsin Pub. Serv. Corp. v. Arby Constr., Inc. , 2012 WI 87, ¶30, 342 Wis. 2d 544, 818 N.W.2d 863.
¶28 Claim preclusion exists to prevent endless litigation. Id. , ¶33. It provides that a final judgment is conclusive in all subsequent actions between the same parties as to all matters that were litigated, or could have been litigated, in the former proceeding. Id. Three elements must be present for claim preclusion to apply in a given case: (1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and (3) a final judgment on the merits in a court of competent jurisdiction. Id. , ¶35. Here, the Town concedes that the first and third elements of claim preclusion are satisfied. Thus, the only disputed issue is whether there is an identity between the causes of action in the instant judicial review petition and Town of Forest I .
¶29 Wisconsin applies a "transactional approach" to determine whether an identity exists between the causes of action in two lawsuits. Menard, Inc. v. Liteway Lighting Prods. , 2005 WI 98, ¶30, 282 Wis. 2d 582, 698 N.W.2d 738.
"Under this analysis, all claims arising out of one transaction or factual situation are treated as being part of a single cause of action and they are required to be litigated together." The concept of a transaction, "connotes a natural grouping or common nucleus of operative facts." In determining if the claims of an action arise from a single transaction, we may consider whether the facts are related in time, space, origin, or motivation.
Id. (citations omitted).
¶30 The Town argues the "fundamental issue" in its present petition for judicial review is whether WIS. ADMIN. CODE ch. PSC 128 "allows for curtailment to be used as a pre-design feature." The Town contends the circuit court did not address this issue in Town of Forest I , and the issue therefore remains unresolved. Consequently, the Town argues the court's decision in Town of Forest I did not bar the Town from raising the curtailment issue in its present judicial review petition.
¶31 The Town's argument in this regard misses the mark. It does not matter, for purposes of our analysis, that Town of Forest I did not address whether curtailment is a permissible design feature under WIS. ADMIN. CODE ch. PSC 128. Claim preclusion bars a party from litigating matters that could have been raised in a prior proceeding, not just matters that actually were raised and resolved. See Wisconsin Pub. Serv. Corp. , 342 Wis. 2d 544, ¶33.
¶32 Here, it is clear the Town could have raised its present argument regarding curtailment in Town of Forest I . Before the PSC issued its final decision on reopening, the Town argued curtailment was not a permissible design feature under WIS. ADMIN. CODE ch. PSC 128. The PSC did not squarely address that argument in its final decision on reopening. Nevertheless, it approved Highland's application for a certificate of public convenience and necessity, which included the use of a curtailment plan. The Town then petitioned for judicial review of the PSC's final decision on reopening. However, it did not raise any argument in its petition that the PSC's decision should be reversed because curtailment could not be used as a design feature in the planning phase of Highland's project. Instead, the Town argued there was insufficient evidence to support the PSC's finding that Highland's curtailment plan would ensure compliance with the applicable noise limits. The circuit court addressed that issue in Town of Forest I , concluding substantial evidence supported the PSC's determination. The Town did not appeal the court's decision in Town of Forest I , nor did it seek reconsideration of that decision on the basis that curtailment could not be used in the planning phase of Highland's project.
¶33 Nothing prevented the Town from raising its present argument regarding curtailment in Town of Forest I . The Town's arguments in Town of Forest I arose from the same nucleus of operative facts as its curtailment argument, see Menard, Inc. , 282 Wis. 2d 582, ¶33, and as the above summary shows, at the time the Town filed its petition for judicial review in Town of Forest I , it had already raised its curtailment argument before the PSC. Under these circumstances, we agree with the PSC that there is an identity between the causes of action in the Town's present judicial review petition and Town of Forest I .
¶34 The Town contends its present judicial review petition arises from a different factual scenario than Town of Forest I . In essence, the Town argues that the issue of whether WIS. ADMIN. CODE ch. PSC 128 permits the use of curtailment in the planning phase of a project was not relevant in Town of Forest I because the PSC's final decision on reopening required compliance with the applicable noise limits only 95% of the time. After the circuit court concluded in Town of Forest I that there was insufficient evidence to support a 95% compliance standard, the PSC removed the 95% compliance standard from Highland's certificate of public convenience and necessity, but it retained the inclusion of a curtailment plan. The Town argues the absence of the 95% compliance standard in the PSC's final decision on remand is a significant factual difference between its present judicial review petition and Town of Forest I .
¶35 We disagree. Regardless of whether Highland was held to complete compliance with the noise limits in WIS. ADMIN. CODE ch. PSC 128 or only 95% compliance, the propriety of allowing Highland to use curtailment as a means of ensuring the applicable level of compliance was a relevant issue in Town of Forest I . Highland's application for a certificate of public convenience and necessity included curtailment as part of its compliance plan from the beginning. Nothing prevented the Town from raising the same argument regarding curtailment in Town of Forest I that it attempted to raise in its present petition for judicial review.
¶36 Finally, the Town asserts that, even if claim preclusion would otherwise bar its judicial review petition, two exceptions to claim preclusion are applicable here. First, the Town urges us to adopt a new exception to claim preclusion, under which a decision reopened by the PSC under WIS. STAT . § 196.39(1) would automatically constitute a new transaction if it contained new findings of fact or conclusions of law. The Town argues that recognizing an exception to claim preclusion under these circumstances would comport with the "rationale of the transaction test," as stated in Kruckenberg v. Harvey , 2005 WI 43, 279 Wis. 2d 520, 694 N.W.2d 879.
¶37 The Town's argument in this regard is unpersuasive. While the Town contends that a reopened decision containing new factual findings and legal conclusions necessarily constitutes a new transaction, in this case, the new factual findings and legal conclusions in the PSC's final decision on remand pertained only to the two specific issues remanded by the circuit court in Town of Forest I : (1) whether the evidence supported the application of a 95% compliance standard; and (2) whether the evidence supported applying a lower nighttime noise limit for certain sensitive residences. The PSC did not make any new findings of fact or conclusions of law regarding the issue raised in the Town's present judicial review petition-i.e., whether WIS. ADMIN. CODE ch. PSC 128 permits curtailment to be used in the planning phase of Highland's project. In fact, the circuit court expressly noted in its decision dismissing the present judicial review petition that curtailment "was not an issue that was remanded back to the [PSC]." Under these circumstances, any new findings of fact or conclusions of law in the PSC's final decision on remand did not transform that decision into a new transaction, for purposes of claim preclusion.
¶38 Moreover, Kruckenberg does not support applying the Town's proposed exception to claim preclusion in the instant case. In Kruckenberg , our supreme court explained:
The transactional approach to claim preclusion reflects "the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so." One text states that the pragmatic approach that seems most consistent with modern procedural philosophy "looks to see if the claim asserted in the second action should have been presented for decision in the earlier action, taking into account practical considerations relating mainly to trial convenience and fairness."
Kruckenberg , 279 Wis. 2d 520, ¶27 (footnotes omitted). As the above quotation demonstrates, the transactional approach to claim preclusion is premised on the notion that a party should present all claims arising out of the same transaction in a single lawsuit. Here, we have already determined that the Town's present argument regarding curtailment should have been raised in Town of Forest I . As such, applying the Town's proposed exception to claim preclusion in this case would not comport with the rationale for the transactional test set forth in Kruckenberg .
¶39 The Town also argues that a "policy exception" to claim preclusion is applicable here. It again cites Kruckenberg , in which our supreme court stated:
[S]trict application of the doctrine of claim preclusion in the present case places process over truth. The boundary line [at issue here] is important to the parties in the present litigation and future owners of the properties and should be decided on the merits once and for all. Allowing litigation about the boundary line will produce a final judgment that definitively settles the issue and can be recorded to put the public on notice. The legal system should, in the present case, be more concerned with deciding the location of the boundary line than with strictly applying the doctrine of claim preclusion.
Kruckenberg , 279 Wis. 2d 520, ¶46. The Kruckenberg court further emphasized that, in the case before it, a prior lawsuit had "failed to yield a coherent disposition of the controversy" and had "left the parties not in a state of repose but in an unstable and intolerable condition." Id. , ¶48 (citations omitted).
¶40 The same cannot be said here. In this case, the issue of curtailment was raised in the initial administrative proceedings, and the PSC approved Highland's proposed use of curtailment as a means to ensure compliance with the applicable noise limits. The Town then petitioned for judicial review of the PSC's decision, but instead of arguing curtailment could not be used in the planning phase of Highland's project, the Town argued the evidence was insufficient to support the PSC's finding that curtailment would ensure compliance. The circuit court rejected that argument in Town of Forest I but remanded the matter to the PSC for additional proceedings on two other issues. The PSC then addressed those two issues in its final decision on remand.
¶41 On these facts, it is evident that the administrative and judicial proceedings on Highland's application for a certificate of public convenience and necessity have yielded a coherent disposition of the controversy, and they have not left the parties in an unstable and intolerable condition. See Kruckenberg , 279 Wis. 2d 520, ¶48. Moreover, the Town does not explain why, in this specific case, we should be more concerned with addressing the merits of the curtailment issue it could have raised earlier in the circuit court than with strictly applying the doctrine of claim preclusion. See id. , ¶46. We therefore decline to apply the "policy exception" to claim preclusion described in Kruckenberg in this case. Instead, for the reasons stated above, we affirm the circuit court's order dismissing the Town's petition for judicial review, based on the doctrine of claim preclusion.
By the Court. -Orders affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

"The designation dBA, as distinguished from dB (decibel), indicates an A-weighted value. The 'A-weighted' noise level attempts to mimic the disruptive effect of noise on the human ear by deemphasizing the very low and very high frequency components of noise." Jensen v. City of Santa Rosa , 233 Cal. Rptr. 3d 278, 286 (Cal. Ct. App. 2018).

All references to Wis. Admin. Code ch. PSC 128 are to the December 2012 version.

According to the PSC's website, the Wind Siting Council is an advisory body that was created by the legislature in 2009 "in order to advise the PSC during its wind siting rulemaking ... and to survey and study on an ongoing basis the impacts of wind energy systems and regulatory developments regarding the siting of wind energy systems." Wisconsin Pub. Serv. Comm'n , Wind Siting Council , https://psc.wi.gov/Pages/Renewables/WindSitingCouncil.aspx (last visited Dec. 18, 2018).

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

For the remainder of this opinion, we refer to Judge Vlack as "the circuit court."