**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 2, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.   2024AP1033
                          2024AP1525
STATE OF WISCONSIN**

Cir. Ct. No.  2015FA155

**IN COURT OF APPEALS
DISTRICT II**

IN RE THE MARRIAGE OF:

RICHARD A. SCHULTZ,

   PETITIONER-RESPONDENT,

 V.

TARA J. SCHULTZ,

   RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for Calumet County: GEORGE A. LIMBECK, Judge.  *Affirmed.*

¶1 GUNDRUM, P.J.[1] In these consolidated cases, Tara J. Schultz appeals circuit court orders (1) holding her in contempt of court for failing to pay the Internal Revenue Service (IRS) debt allocated to her in a marital settlement agreement (MSA) and final judgment of divorce with Richard A. Schultz and (2) denying her motion to stay enforcement of the contempt order. For the following reasons, we affirm.

## Background

¶2 Richard and Tara were divorced in April 2016, and the circuit court incorporated their MSA into the final judgment of divorce, making it "the judgment of [the] court." In relevant part, the MSA states that "[e]ach of the parties shall be responsible for the following debts and liabilities, and each shall hold the other harmless for the payment thereof" and explains that Richard is obligated to pay the divorced couple's Wisconsin Department of Revenue (DOR) debts from 2011, 2014 and 2015, and Tara is obligated to pay their IRS debts from 2011-2015. In addition, the MSA provides:

> The parties owe state and federal taxes. The parties are jointly and severally liable to the [IRS] and the [DOR]. The enclosed property division awards and allocates specific tax debt to each party. Each party will negotiate with the [IRS] or [DOR] in good faith in a manner that does not work to the detriment of the other party. If one party makes an arrangement with the [IRS] or [DOR] to pay a specific monthly amount that party shall include in that agreement with the [IRS] or [DOR] any amount that the [IRS] or [DOR] would attempt to make the other party pay. The party not *obligated to pay the [IRS]* or [DOR] *obligation* as set forth in this agreement shall not enter into any agreement with the [IRS] or [DOR] to pay a specific

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(h) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

2

> monthly or other amount unless both parties agree. The *party obligated to pay the tax obligations as set forth herein* shall indemnify the other party in the event that the [IRS] or [DOR] attempts to collect from the party not obligated pursuant to this agreement.

(Emphases added.) The MSA further states that "[t]he court reserves maintenance jurisdiction in the event of non-payment of any debt."

¶3 On January 17, 2020, Richard sought an order to show cause as to why Tara should not be found in contempt, in part for not paying the IRS debt. The circuit court held an evidentiary hearing on April 27, 2023.

¶4 Following the hearing, the circuit court found Tara in contempt for her handling of her MSA obligation to pay the 2011-2015 IRS debt. In its written order,[2] the court found that Tara had sold her insurance business[3]—through which she was making $200,000 per year—for $750,000, receiving $600,000 up front with another $150,000 paid to her in monthly installments of $3,000 per month. The court observed that although at one point she had had $200,000 on hand, an amount sufficient to pay off the IRS debt at that time, she used none of it towards the debt. Even after accounting for Tara's reported use of the $600,000, the court noted that Tara still should have had $132,000 remaining, which she acknowledged. She testified, however, that she was "not sure" where that money went.

---

[2] The Honorable Daniel J. Borowski presided over the April 27, 2023 hearing. Following Judge Borowski's retirement, the Honorable George A. Limbeck issued the written order and presided over the remainder of the case.

[3] Tara sold the business in 2018.

¶5     The circuit court further found that Tara's testimony showed that Tara could resume employment in the fields for which she is trained and licensed and that she did not have any medical problem or other reason that would preclude her from being employed full-time.  The court also found that full-time employment would have provided Tara with a higher income but also "would have resulted in the IRS ordering a much higher monthly repayment plan," and Tara simply chose not to pursue such higher paying employment.

¶6     Additionally, the circuit court was troubled that

> [a]t the time of the final divorce hearing, April 13, 2016, the federal taxes awarded to [Tara] totaled approximately $220,000.  As of November 21, 2023, the federal taxes are approximately $232,000.  The court finds that [Tara] has not paid any of the tax obligation for the past 7 year[s] 7 months.  [Tara] has not even paid in full the interest and penalty on the underlying IRS tax obligations.  Therefore, [Tara's] conduct has in fact *increased* the IRS tax obligation, and will continue to increase the amount owed at the current rate of repayment.

(Emphasis added; footnote omitted; citations omitted.)  The court concluded that "[Tara's] voluntary employment decisions were unreasonable under the facts of this case, i.e.[,] [Tara] was shirking her duties to repay the IRS tax obligation."  The court continued:

> [Tara] gradually and voluntarily walked away from her highest earning capacity job, the real estate business, then Delta Airlines (at only 3 days per week[,] a much lower income job which reduced her installment payment plan to the IRS in half) and finally, unemployment with only 2 years of payments under the business sale for income (which droppe[d] her monthly repayment plan [to the IRS] to the current $350 per month).

The court, quoting *Sellers v. Sellers*, 201 Wis. 2d 578, 587, 549 N.W.2d 481 (Ct. App. 1996), added that "[i]t is unnecessary to find that [Tara] engaged in an

intentional scheme to avoid financial obligations. Rather, it is sufficient 'that the court finds the employment decision both voluntary and unreasonable under the circumstances.'" Tara "[h]as intentionally and voluntarily ceased working," the court continued, "thereby reducing her ability to pay on the IRS [debt] to the point where the amount owed is actually **increasing** every month," "making it even more difficult for the debt to be paid in full."

¶7     At a June 14, 2024 hearing on Tara's motion to stay pending appeal, the circuit court discussed aspects of the case based upon the evidence that had been presented at the evidentiary hearing. It explained that Tara

> intentionally and volitionally spent th[e] money [she received for selling her business] on anything but her federal financial tax obligation and acknowledges that even after deducting all the things she spent money on—and I will point out a couple of those because I think that they highlight my point even more.
>
> She had no legal obligation anymore to her adult children. No more legal obligation to her grandchildren and yet she—and she clearly had a legal obligation to pay off the IRS tax debt and yet she spends thousands of dollars, if not tens of thousands of dollars, paying college debt off for her kids for which she has no legal obligation for and she ends up paying thousands of dollars so her grandchildren can go to a private school.
>
> And her testimony was very clearly at the hearing she fully acknowledged that the $132,000 was an accurate number that she should still have. And yet an incredibly successful businesswoman with a hell of a sense of business acumen, a business that earned her $200,000 a year and earned her a three-quarters of a million dollar pay out, and she testified under oath that she did not know where the $132,000 was. That is incredulous. That is bordering on—she's lying. There is just no way that a woman with that business acumen and all the attention to detail that it takes to run a successful business profitably would lose track of $132,000.

¶8 The circuit court noted that Tara had been receiving, and will continue to receive for several more years, $3,000 per month as part of the sale of her business. The court continued:

> So she ha[d an annual] income [of $200,000] and then she voluntarily decides to let her professional licenses lapse. She goes back to Delta which lowers the monthly payment down to a little over a thousand dollars a month. Works that for a couple months and then voluntarily just decides to quit that because she wants to spend more time with grandchildren and children when she has this legal obligation that she's not only ignoring but every month that she pays three hundred [and fifty] bucks a month, the debt actually goes up.[4] And the only party that is potentially suffering irreparable harm here is [Richard] because … given the financial situation that Tara Schultz has created for herself[,] the only person that is going to end up being gone after by the IRS to collect on this at some point in time is going to be [Richard].
>
> ….
>
> … The only person who is going to suffer or going to suffer irreparable harm is Richard Schultz when the IRS inevitably has no choice but to go after him for payment on the debt.
>
> ….
>
> … [I]t's just the recognition that every month goes by she makes her $3[5]0 a month payment and the debt goes up, what four, five hundred bucks a month, probably? So by the time we're done with the appeal, the underlying debt is probably going to be about $300,000.

¶9 After the hearing, the circuit court entered an "Amended Order on Motion for [Rec]onsideration," in which it concluded "that the parties' intent

---

[4] When Tara owned her business, she was paying $2,135 per month towards the IRS debt, which payments Tara got reduced to $1,067 after she sold her business and went to work at Delta Airlines, and which she then got reduced to $350 per month when she chose to stop working altogether.

under the terms of the MSA in assigning debt was for the debt to be paid in full." The court again ticked through the same reasons for finding Tara in contempt and added, quoting *Chayka v. Santini*, 47 Wis. 2d 102, 107, 176 N.W.2d 561 (1970), that "[t]hrough these behaviors th[e] court determines that [Tara] has effectively 'stripped nearly all of the flesh' from her ability and obligation to pay the debt as agreed within the MSA." Tara "intentionally stripped away her ability and opportunities to repay the debt in full and thereby has," according to the court, "intentionally breached her good faith obligation." Thus, the court found Tara in contempt "for intentionally and continually disobeying her contractual and court ordered obligation of 'good faith' in payment in full of the federal income tax obligations she was assigned pursuant to the MSA and court order adopting the same."

¶10 The circuit court ordered Tara to serve six months in jail, with the following conditions for purging the contempt:

a. Paying $132,600 on the delinquent federal income tax debt at issue on or before July 1, 2024, since [Tara] acknowledged this amount remained of the $600,000 up-front payment for the sale of her business and;

b. Paying $3,000 per month on or before August 1, 2024 to the [IRS] and then on or before the 1st of each month thereafter until the balance due is paid in full,

  i. Since she is receiving almost this much every month under the terms of her business sale to pay the balance of $150,000 due on the contract after the upfront payment, and;

  ii. Admits that her boyfriend with whom she cohabitates is paying her living expenses.

Tara moved the court to stay enforcement of its order pending appeal, which the court granted "as it relates to jail time provision of the [c]ourt's [c]ontempt

[o]rder" but denied "as it relates to the financial portions of the purge conditions" of the order, adding "[a]ny and all financial obligations previously imposed by this court upon [Tara] are not impacted by the limited [s]tay [p]ending [a]ppeal and remain in full force and effect."

¶11    Tara now appeals the circuit court's order holding her in contempt and the order denying her motion to stay as it relates to the financial obligations.

## Discussion

*Contempt Order*

¶12    Tara claims the circuit court erroneously exercised its discretion in finding her in contempt of court based on her handling of her obligation to pay the 2011-2015 IRS debt.[5]  She maintains the court erred because the MSA "does not call for the debt to be paid off by a date certain" or "at a certain rate."  We conclude the court did not err.

¶13    Whether a contempt of court occurred is a question of fact, which we will uphold unless it is clearly erroneous.  ***Oliveto v. Circuit Ct. for Crawford Cnty.***, 194 Wis. 2d 418, 427, 533 N.W.2d 819 (1995).  Ultimately, "[a] circuit court's contempt decision is discretionary and will be affirmed if the court reached a reasonable decision after applying the proper legal standards to the relevant facts."  ***Society Ins. v. Bodart***, 2012 WI App 75, ¶7, 343 Wis. 2d 418, 819 N.W.2d 298.  "We generally look for reasons to sustain the [circuit] court's discretionary

---

[5] While Tara asserts she did not violate the MSA and thus that the circuit court erred in finding her in contempt, she does not develop a challenge to any of the court's specific findings of fact.  Further, she does not contend Richard is not an aggrieved party, *see* WIS. STAT. § 785.03(1), or that she is not able to pay the MSA-ordered obligations.

decisions," and we may search the record for facts to support them. ***State v. Lock***, 2012 WI App 99, ¶43, 344 Wis. 2d 166, 823 N.W.2d 378. With remedial contempt, the burden of proof is on the person against whom contempt is sought, here Tara, to show that his or her conduct was not contemptuous. *See* ***State v. Rose***, 171 Wis. 2d 617, 623, 492 N.W.2d 350 (Ct. App. 1992).

¶14    WISCONSIN STAT. § 785.01(1)(b) defines "[c]ontempt of court" as intentional "[d]isobedience, resistance or obstruction of the authority, process or order of a court." Tara's appeal focuses on whether her conduct constituted "disobedience" of the circuit court's judgment of divorce incorporating the MSA; she insists it did not. Contempt, however, may also manifest as "resistance … of the authority, process or order of a court." ***Id.*** Although the court never used the term "resistance," it unquestionably implicitly found that Tara had intentionally resisted the MSA order as to her "obligat[ion] to pay the tax obligation[]" to the IRS.

¶15    As Tara asserts, the MSA "does not call for the debt to be paid off by a date certain" or "at a certain rate." However, it clearly makes Richard and Tara respectively "responsible for" their joint and several DOR debt and IRS debt, requiring "[e]ach party [to] negotiate with the [IRS] or [DOR] in good faith in a manner that does not work to the detriment of the other party" and, as relevant here, "obligate[s Tara] to pay the tax obligation[]" to the IRS. The MSA additionally reserved in the circuit court "maintenance jurisdiction" to address

"non-payment of any debt" by either of the parties.[6]  We conclude the court did not err in finding Tara in contempt, because her conduct amounted to at least "resistance" to the judgment.

¶16     We cannot conclude the circuit court erred in determining "that the parties' intent under the terms of the MSA in assigning [the] debt was for the debt to be paid in full."  The MSA requires Tara "to pay the tax obligation[]" to the IRS, and, as the court correctly found based on her choices over the years, she chose to make no serious attempt to do that.  The court correctly observed that "Tara's conduct in dealing with … paying the IRS tax obligations paints an unflattering picture of her efforts to pay the actual debt."  As the court noted, Tara continually had her monthly payments toward the IRS debt reduced—from $2,135 when she owned her business to $1,067 after she sold her business and went to work at Delta Airlines and then further to $350 when she chose to stop working altogether.  Her failure to even reasonably attempt to fulfill this obligation is quite obvious when, after seven years, the IRS debt had increased, not decreased—a finding by the court she does not dispute—even though she had funds available and could have retired the entire debt by the time of the contempt hearing.  Moreover, although Tara received $600,000 from the sale of her business, and at other times had sufficient funds available to pay off the debt, she used none of those funds to reduce the debt.  The record shows, as the circuit court thoroughly

---

[6] While not significant for our decision, we note that the MSA also obligates Tara to indemnify Richard if the IRS attempts to collect on the IRS debt from him.  That alone does not answer what repercussions would flow to Richard on this joint and several IRS debt should, for example, Tara pass away with no assets to her name.  At the April 27, 2023 hearing on the contempt motion, the circuit court similarly mused about the potential negative impact to Richard, based upon the joint and several nature of the IRS debt, when Tara had "placed herself in a position financially … where she couldn't hold [Richard] harmless or indemnify him for anything financially based on her actions."

detailed, she was using her time, her talents and the funds available to her to do anything but pay the tax obligation.

¶17    We conclude Tara failed to meet her burden to demonstrate that her conduct was not contemptuous—specifically, to show that her conduct did not constitute, at a minimum, resistance to her obligations under the MSA—or that the circuit court erroneously exercised its discretion in concluding a contempt of court occurred.

*Denial of Motion to Stay*

¶18    In connection with case number 2024AP1525, Tara contends the circuit court erred in denying her motion to stay enforcement of the contempt order.  As the appellant, Tara bears the burden of showing that the circuit court erred.  *See **Gaethke v. Pozder***, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381 ("[O]n appeal 'it is the burden of the appellant to demonstrate that the [circuit] court erred.'"  (Second alteration in original; citation omitted.)).  Because Tara fails to develop any argument related to this order, she cannot and does not overcome her burden.  *See **ABKA Ltd. P'ship v. Board of Rev.***, 231 Wis. 2d 328, 349 n.9, 603 N.W.2d 217 (1999) (stating that we do not address undeveloped arguments).[7]

*By the Court.*—Orders affirmed.

---

[7] Tara also claims in a footnote in her appellate brief that she is "appealing … the order requiring her to pay $18,500 in attorneys' fees."  She similarly fails to develop any argument related to this order, and thus her challenge to that order also fails.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.