BLANCHARD, J.
*214 ¶1 Jody Ann Anderson initiated this lawsuit against Kayser Ford, Inc. Kayser's insurer, Regent Insurance Company, intervened, in part to try to establish that Regent has no duty to defend Kayser. Kayser appeals an order of the circuit court dismissing Regent from the suit and declaring that Regent has no duty to defend Kayser at this time. We reverse the order because we conclude that Regent has a continuing duty to defend Kayser. The duty continues because Regent cannot establish as a matter of law that no theory of liability in Anderson's complaint may yet obligate Regent to indemnify Kayser, and the circuit court did not determine that Regent has no arguable indemnification liability on any claim in the complaint.
*550 BACKGROUND
¶2 Anderson commenced this lawsuit based on allegations arising from her purchase of a used car from Kayser. Details regarding Anderson's allegations against Kayser do not matter to the arguments presented on appeal. It is important, however, to differentiate among the four claims made by Anderson in the operative complaint, in particular between Count One and Count Four:
• Count One: Fraudulent representations in violation of WIS. STAT. § 100.18 (2017-18);[1]
• Count Two: Statutory and code violations based on various provisions in WIS. STAT. § 218.0116 ;
*215 • Count Three: Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, and WIS. STAT. §§ 402.314, 402.315 ; and
• Count Four: Willful violation of purchase contract and disclosure requirements under various provisions of WIS. STAT. § 218.0116 and state administrative code provisions.[2]
¶3 At all pertinent times, Kayser was a named insured on a policy of insurance with Regent. Called a Garage Policy, it includes a Garage Coverage Form as modified by a Select Auto Dealers Additional Coverages Endorsement. We summarize applicable policy language in the Discussion section below. It is sufficient for background purposes to understand that the policy contains an express contractual right and duty of Regent to defend Kayser in any suit for identified "damages."
¶4 After Kayser alerted Regent regarding Anderson's claims, Regent initially defended Kayser. Regent then successfully moved to intervene in this suit. Regent requested an order stating that it has no obligation to indemnify Kayser on any claim and therefore has no duty to defend Kayser. The court bifurcated the suit. The first stage would resolve whether Regent has an arguable obligation to indemnify Kayser on any claim. The second stage would resolve the merits of Anderson's claims.
¶5 In the first stage of litigation, the court ruled on summary judgment that, assuming that Anderson *216 were to prevail on the merits, Regent would have an arguable obligation to indemnify Kayser on one of the four claims, Count One, but not on the other three claims. This set of summary judgment decisions regarding Regent's arguable obligations to indemnify Kayser did not result in a final judgment that could be appealed as of right, and no party filed a petition with this court seeking leave to appeal. See WIS. STAT. § 808.03(1) - (2) ("Appeals as of right") ("Appeals by permission.").
¶6 In the second stage of litigation, the court made a separate set of summary judgment decisions, this time on the merits of Anderson's claims. The court ruled that trial is needed on only Count Four, dismissing the other three claims on the merits. As with the ruling on the duty to indemnify, the court's partial summary judgment decisions on the merits did not result in a final judgment that could be appealed as of right, and again no party filed a petition seeking leave to appeal the partial summary judgment rulings on the merits.
*551 ¶7 To summarize, the court determined that the Garage Policy created an arguable obligation of Regent to indemnify Kayser for the allegations in Count One, but only Count One, and separately dismissed Count One in a merits summary judgment decision. This left only a trial on the merits of Count Four, for which the court ruled there was no arguable obligation to indemnify.
¶8 Shortly before the scheduled trial, Regent filed a "pre-trial motion" in which it argued that it should be dismissed from this suit. The basis for dismissal would be that the court had determined that Regent has no arguable obligation to indemnify Kayser on Count Four, the only claim to survive the court's summary judgment decisions on the merits, and therefore *217 "Regent can have no duty to defend or duty to pay legal defense costs in this case." To clarify, Regent's motion did not ask the circuit court to revisit its coverage ruling on Count One. Instead, Regent asked the court to dismiss Regent from this suit, based on the court's prior rulings referenced above, because they established that Regent has no duty to defend Kayser at the trial on Count Four.
¶9 Kayser did not dispute for purposes of resolving the motion that Regent could have no obligation to indemnify Kayser on Count Four if Anderson were to prevail at trial on Count Four. However, Kayser argued, Regent has "the duty to defend the entire suit," which "continues until the final termination of the litigation, including the appellate process." This is so, Kayser contended, because the circuit court's summary judgment ruling dismissing Count One "is not a final appealable judgment and Regent has not settled" the claim in Count One.
¶10 The circuit court granted Regent's motion on the ground that "there is no coverage for" the claim in Count Four and therefore Regent has "no duty to defend [Count Four] at this time." On this basis, the court entered an order dismissing Regent from the lawsuit "on the merits and with prejudice," ruling that Regent "has no duty to indemnify, no ongoing duty to defend, and no duty to pay legal defense costs incurred by Kayser ... in this case."
¶11 Kayser appeals only this order dismissing Regent from the suit based on the absence of a duty to defend. The order is final as to Regent, and therefore appealable as of right, because it dismisses the entire matter in litigation as to Regent. Neither party has appealed, cross appealed, or petitioned for leave to appeal any other ruling of the circuit court, notably the *218 court's rulings that Regent has an arguable obligation to indemnify for Count One and its dismissal on summary judgment of all claims except Count Four.
DISCUSSION
¶12 This appeal involves interpretation of an insurance policy to determine the scope of an insurer's duty to defend its insured, which presents questions of law that we review de novo. See Water Well Sol. Serv. Group, Inc. v. Consolidated Ins. Co. , 2016 WI 54, ¶12, 369 Wis.2d 607, 881 N.W.2d 285. We also interpret case law addressing the duty to defend, which presents further questions of law that we review de novo. See State v. Walker , 2008 WI 34, ¶13, 308 Wis.2d 666, 747 N.W.2d 673.
¶13 We first briefly address pertinent policy language. As part of that discussion, we explain that we reject as undeveloped one argument that Regent makes in support of the circuit court's challenged order, purportedly based on policy language. We then turn to the primary issue, whether Regent's duty to defend continues or has ended under the circumstances here. We explain why we conclude that Regent has a *552 continuing duty to defend Kayser in this suit until it can be concluded as a matter of law that Regent could have no obligation to indemnify Kayser.
I. POLICY LANGUAGE
¶14 We construe policy terms as they would be understood by a reasonable insured. Sustache v. American Family Mut. Ins. Co. , 2008 WI 87, ¶19, 311 Wis.2d 548, 751 N.W.2d 845.
*219 ¶15 The following is pertinent policy language that addresses claims of the type made in Count Four:
PRIOR DAMAGE DISCLOSURE LIABILITY
SECTION II - LIABILITY COVERAGE is changed by adding the following:
We [Regent] will pay all sums you [Kayser] legally must pay as "damages" caused by an "Insured" solely because of an error or omission in complying or failing to comply with any federal, state or local statute, code or ordinance pertaining to disclosure of prior damage to "autos" you sold.
1. We have the right and duty to defend any "suit" asking for these damages. However, we have no duty to defend "suits" on account of an error or omission not covered by this Coverage Form.
....
3. As used in this section, the word "damages" means, and is limited to, the difference between:
a. The actual cash value of the "auto" as represented when sold to your customer; and
b. The actual cash value of the "auto" in the actual condition in which it existed at the time of sale.
¶16 We now address Regent's purported policy-language-based argument.[3] Regent asserts that it has no duty to defend Kayser under the policy because *220 Regent has an obligation to indemnify Kayser only for bodily injury or property damage, which the operative complaint does not allege. Regent's argument is undeveloped in multiple respects. As record support for what would seem to be the linchpin of the argument, Regent cites to a portion of the record that does not contain the language that Regent quotes. In any case, we see no way to reconcile Regent's argument with the plain meaning of the policy language quoted above. As Kayser explains, this language plainly provides that the "damages" at issue are damages caused by an insured who fails to comply with statutes, codes, or ordinances pertaining to disclosure of prior damage to autos sold by Kayser.
¶17 Having disposed of Regent's undeveloped policy-language-based argument, we turn to the broad policy language here, quoted above, that Regent has "the right *553 and duty to defend" Kayser in "any 'suit' asking for these damages." Regent does not dispute that this language places the policy in the same category as policies addressed in Wisconsin case law that generally address the duty to defend. See, e.g. , Water Well , 369 Wis.2d 607, ¶31, 881 N.W.2d 285 (addressing policy under which insurer *221 had " 'the right and duty to defend the insured against any "suit" seeking' " covered damages) (quoted source omitted).
¶18 Because the insurance policy here is of the type addressed in the case law, we apply that case law in discussion below. While an insurer's duty to defend an insured is based on policy language, "determining the scope of an insurer's duty to defend often requires the consideration of rules which, while not express in the insurance policy, are well established in case law." See Society Ins. v. Bodart , 2012 WI App 75, ¶9, 343 Wis.2d 418, 819 N.W.2d 298. More specifically, our supreme court has relied on public policy considerations to define the duty to defend that insurers typically owe to their insureds, as we discuss below.
¶19 Before turning from policy language to case law, we observe that neither side makes a persuasive argument that a reasonable insured would understand from the policy language alone that Regent's duty either has ended or instead continues under the circumstances here. To repeat, the only arguably covered claim has not been dismissed based on a valid settlement, but that claim was dismissed on partial summary judgment, with a pending trial on a claim that is not arguably covered. We conclude that, under these circumstances, a reasonable insured would not have a clear understanding of whether there is a duty to defend based on the policy language alone.[4] At the same time, we note that an overarching consideration *222 in a dispute involving the typical duty-to-defend policy language, such as the language at issue here, is that "[a]ny doubt regarding the duty to defend is resolved in favor of the insured." Id. , ¶17 (citing Olson v. Farrar , 2012 WI 3, ¶29, 338 Wis.2d 215, 809 N.W.2d 1 ; Fireman's Fund Ins. Co. of Wis. v. Bradley Corp. , 2003 WI 33, ¶20, 261 Wis.2d 4, 660 N.W.2d 666 ).
II. DUTY TO DEFEND
¶20 We begin with general background on the duty to defend as described in Wisconsin case law, in particular the four-corners test and what we will call the "entire-suit" rule. The test and the rule are central to our analysis. Then we turn to the heart of the dispute here regarding the duty to defend.
¶21 We start with the four-corners test. The duty to defend created by an insurance policy is not coextensive with the insurer's obligation to indemnify the insured but instead is broader. Fireman's Fund , 261 Wis.2d 4, ¶20, 660 N.W.2d 666. The duty to defend is broader because it is defined through the four-corners test, in which pertinent policy language *554 is strictly compared with " 'the nature of the claim[s] alleged against the insured [as expressed within the four corners of the complaint] *223 ... even though the suit may be groundless, false or fraudulent.' " Id. , ¶21 (quoting Grieb v. Citizens Cas. Co. of N.Y. , 33 Wis.2d 552, 558, 148 N.W.2d 103 (1967) ). Thus, under the four-corners test, the insurer has a duty to defend so long as the insurer " 'could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case.' " Sustache , 311 Wis.2d 548, ¶22, 751 N.W.2d 845 (emphasis added) (quoting Grieb , 33 Wis.2d at 558, 148 N.W.2d 103, which in turn quotes 29A Am. Jur., Insurance § 1452, at 565 (1960) ). Or, put another way, an insurer has a duty to defend as long as it has an "arguable" obligation to indemnify its insured if the plaintiff prevails on the merits. See Fireman's Fund , 261 Wis.2d 4, ¶¶19-21, 660 N.W.2d 666 (duty depends on "arguable," not "actual," obligation to indemnify).
¶22 Our supreme court has strongly emphasized that "there is no exception to the four-corners rule in duty to defend cases in Wisconsin." Water Well , 369 Wis.2d 607, ¶24, 881 N.W.2d 285. Strict application of the four-corners test to define the duty to defend "has long endured," for several reasons. Id. , ¶3. One reason is that "[c]onsiderations of fairness" to insurers "cannot override the contractual terms of the insurance policy on which the duty to defend is based." Id. , ¶24 n.14. Another reason is that the test benefits all parties to the extent that it applies a clear rule that does not allow for speculation " 'beyond the written words of the complaint.' " Id. , ¶25 n.15 (quoting State Farm Fire & Cas. Co. v. Easy PC Sols., LLC , 2016 WI App 9, ¶8, 366 Wis.2d 629, 874 N.W.2d 585 ).
¶23 We now turn to the entire-suit rule, which is a corollary to the four-corners test. In comparing pertinent policy language to the allegations in the *224 complaint, as required by the four-corners test, Wisconsin courts require insurers to defend insureds against all claims alleged in the entire lawsuit, so long as the insurer has an arguable obligation to indemnify the insured on even one claim in the suit. See Marks v. Houston Cas. Co. , 2016 WI 53, ¶42, 369 Wis.2d 547, 881 N.W.2d 309 (duty to defend entire lawsuit against the insured, so long as the policy may provide obligation to indemnify "for even one claim made in a lawsuit"); Fireman's Fund , 261 Wis.2d 4, ¶21, 660 N.W.2d 666 ("when an insurance policy provides coverage for even one claim made in a lawsuit, the insurer is obligated to defend the entire suit"). Thus, under the entire-suit rule, an insurer's duty to defend is not limited to those claims for which it has an arguable obligation to indemnify, but continues as long as the insurer has an arguable indemnification obligation on any claim.
¶24 With that background regarding the four-corners test and the entire-suit rule, we turn to the heart of the dispute here. Regent contends in essence that, at the time the circuit court entered its challenged order, the entire suit was the yet-to-be-held trial on the claim in Count Four. Because Regent has no interest in the outcome of the Count Four trial, it argues, it has no duty to defend Kayser through the trial.
¶25 On a related point, Regent acknowledges that it has the duty, or at least would again resume the duty, to defend Kayser in an appeal if, following the trial on Count Four, Anderson appeals the circuit court's partial summary judgment ruling on the merits of the claim in Count One. In addition, Regent states that it would also defend Kayser during "further *555 proceedings" on Count One in the event that the circuit court's partial summary judgment merits ruling on *225 Count One were reversed on appeal. But until then, Regent contends, it has no duty to defend on any claim and the circuit court properly dismissed it from the suit.
¶26 Kayser contends to the contrary that the entire suit here includes the arguably covered, but dismissed-on-the-merits claim in Count One, because that claim has not been dismissed based on valid settlement or litigated to the point of finality. In short, the claim could be revived on appeal. Under this view, Regent retains a duty to defend the entire suit through its final outcome, which includes the trial on the claim in Count Four and a possible appeal, until Regent's arguable obligation to indemnify on Count One is resolved. Part of Kayser's argument is that, if Regent's position were the legal standard, the "disruptive effect of a fluctuating duty of defense"-with Regent's duty going "dormant," unless and until it is revived at a later date-would be inconsistent with a duty to defend the entire suit.[5]
¶27 We resolve this dispute in favor of Kayser based in part on reasoning in an opinion of our supreme court that neither side cites: Newhouse v. Citizens Sec. Mut. Ins. Co. , 176 Wis.2d 824, 501 N.W.2d 1 (1993) ( Newhouse III ). For reasons we now explain, involving the somewhat complex details of Newhouse III and some potential ambiguity, *226 Newhouse III could not be said with certainty to control on the facts here. At the same time, as we now also explain, we conclude that we are not free to ignore what appears to be a broad, applicable proposition stated in Newhouse III , particularly in light of the four-corners test, the entire-suit rule, and persuasive authority that we discuss after we address Newhouse III .
¶28 Newhouse brought a negligence action against multiple defendants. Id. at 831, 501 N.W.2d 1. One defendant claimed to be insured under a homeowner's policy issued by Citizens providing personal liability coverage for the insured. Id. The insured tendered defense of his case to Citizens. Id.
¶29 Citizens sued the insured in an action separate from the negligence action (although both actions were assigned to the same circuit court judge), seeking a declaratory judgment that the homeowner's policy excluded any obligation of Citizens to indemnify the insured based on Newhouse's allegations. Id. Newhouse then joined Citizens to his personal injury suit, and again Citizens raised the issue of coverage, this time as a defense. Id.
¶30 In the action brought by Citizens, the circuit court issued a declaratory judgment that the policy did not provide coverage. Id. There was no appeal from the declaratory judgment, and thus this ruling presumably remained the law of the case in the action brought by Citizens. See id.
¶31 However, the circuit court issued a matching "no coverage" ruling in the personal injury action and accordingly dismissed Citizens from the underlying negligence suit. Id. at 831-32, 501 N.W.2d 1 ; see also Newhouse v. Laidig, Inc. , 145 Wis.2d 236, 426 N.W.2d 88 (Ct. App. 1988) ( Newhouse I ), review denied (Wis. July 19, 1988) (No. 1987AP1488), abrogated by *556 *227 Schinner v. Gundrum , 2013 WI 71, ¶¶84-88, 349 Wis.2d 529, 833 N.W.2d 685 (concluding that coverage analysis in Newhouse I was erroneous, on a basis not pertinent to the instant appeal). Newhouse and the other defendants, although not Citizens' insured, appealed the "no coverage" ruling. Newhouse III , 176 Wis.2d at 831-32, 501 N.W.2d 1.
¶32 While the appeal regarding coverage was pending (before it was eventually resolved in Newhouse I ), Newhouse's personal injury action headed to trial on the merits.[6] Id . at 832, 501 N.W.2d 1. Before trial, the court asked Citizens whether it sought a continuance, pending resolution of the coverage appeal. Id. Citizens responded no, and neither Citizens nor its insured participated in the trial. Id. Each of the other defendants settled with Newhouse, and the case against the insured was tried without participation by Citizens or the insured. Id. At trial, the circuit court apportioned a percentage of negligence to the insured, awarded damages in amounts not pertinent to this appeal, and entered a corresponding money judgment against the insured. Id.
¶33 Thereafter, the court of appeals in Newhouse I reversed the circuit court's ruling on Citizens' obligation to indemnify the insured, concluding that there was coverage. Newhouse I , 145 Wis.2d at 242-43, 426 N.W.2d 88. A petition for review of Newhouse I to our supreme court was denied.
*228 ¶34 The insured assigned his claims against Citizens to Newhouse, and Newhouse, as assignee, sued Citizens on theories that included breach of Citizens' contractual duty to defend the insured. Newhouse III , 176 Wis.2d at 832-33, 501 N.W.2d 1. The circuit court granted summary judgment to Newhouse on the breach of the duty to defend claim. Id. at 833, 501 N.W.2d 1. As pertinent to issues here, the court of appeals affirmed the circuit court in Newhouse II . Newhouse v. Citizens Sec. Mut. Ins. Co. , 170 Wis.2d 456, 474, 489 N.W.2d 639 (Ct. App. 1992) ( Newhouse II ), aff'd in part, rev'd in part by Newhouse III ; see also Newhouse III , 176 Wis.2d at 833, 501 N.W.2d 1.
¶35 This brings us to Newhouse III , our supreme court's review of Newhouse II . The supreme court concluded that, on these facts, Citizens breached its contractual duty to defend its insured, rejecting both of the following closely related arguments by Citizens: (1) that Citizens "was entitled to rely on the circuit court's decision that no coverage existed under its policy until the court of appeals reversed that decision," and (2) that Citizens "was not required to defend [the insured] at the liability trial because that trial occurred after the circuit court ruled there was no coverage under Citizens' policy and before the court of appeals reversed that determination." Newhouse III , 176 Wis.2d at 835, 501 N.W.2d 1.
¶36 The court began its analysis by stating the four-corners test, noting the status of the insured under the policy, and explaining that there "is no doubt" that the Newhouse allegations triggered Citizens' duty to defend, despite the circuit court's rulings to the contrary in the two actions.
*557 Id. We now quote the discussion that followed, with emphasis on the statements that appear most pertinent here:
"An insurer does not breach its contractual duty to *229 defend by denying coverage where the issue of coverage is fairly debatable as long as the insurer provides coverage and defense once coverage is established." Elliott [v. Donahue , 169 Wis.2d 310, 317, 485 N.W.2d 403 (1992) ]. However, when coverage is not determined before a liability trial, the insurer must provide a defense for its insured with regard to liability and damages. Id. , 169 Wis.2d at 318, 485 N.W.2d 403.
In Elliott , we clearly stated that the proper procedure for an insurance company to follow when coverage is disputed is to request a bifurcated trial on the issues of coverage and liability and move to stay any proceedings on liability until the issue of coverage is resolved. Id. When this procedure is followed, the insurance company runs no risk of breaching its duty to defend.
Citizens did not follow the proper procedure. Citizens refused to accept the circuit court's offer to stay the liability trial until the appeal on the coverage issue was final. Citizens argues that it was entitled to rely on the circuit court's determination that there was no coverage under the policy. However, the circuit court's no coverage determination was not a final decision because it was timely appealed. An insurance company breaches its duty to defend if a liability trial goes forward during the time a no coverage determination is pending on appeal and the insurance company does not defend its insured at the liability trial. When an insurer relies on a lower court ruling that it has no duty to defend, it takes the risk that the ruling will be reversed on appeal.
In cases where a coverage decision is not final before the trial on liability and damages occurs, the insurance company must provide a defense to its insured . Elliott , 169 Wis.2d at 318, 485 N.W.2d 403 ; Mowry v. Badger State Mut. Cas. Co. , 129 Wis.2d 496, 528-29, 385 N.W.2d 171 (1986). The best approach is for the insurance company to defend under a reservation of rights.
Id. at 836-37 (emphasis added).
*230 ¶37 Aspects of this passage may be ambiguous for current purposes, and numerous facts in Newhouse III do not align with the facts here. To cite one notable example, the issue pending in the appeal that was resolved by Newhouse I was the insurer's obligation to indemnify. Here, in contrast, there can be an appeal regarding Count One following the Count Four trial only if Anderson appeals on the merits (although we note that Regent could cross appeal the circuit court's decision regarding the obligation to indemnify on Count One). Further, in the instant case we do not have the confusion that arose in Newhouse III from two separate actions and an insurer's decision to decline an invitation from the circuit court to stay the merits trial pending the outcome of the appeal on the coverage issue.
¶38 Despite these differences, however, we cannot ignore the fact that our supreme court flatly states that it is a breach of the duty to defend to fail to provide a defense at a liability trial "during the time a no coverage determination is pending on appeal." See Newhouse III , 176 Wis.2d at 836, 501 N.W.2d 1 ; Zarder v. Humana Ins. Co. , 2010 WI 35, ¶58, 324 Wis.2d 325, 782 N.W.2d 682 (the court of appeals cannot dismiss a statement from an opinion of our supreme court on the ground that it is dictum). Further, we are influenced by the fact that our supreme court has quoted this precise language from Newhouse III
*558 on at least two occasions, both times recently, without qualification. See Water Well , 369 Wis.2d 607, ¶27 n.16, 881 N.W.2d 285 ; Burgraff v. Menard, Inc. , 2016 WI 11, ¶78, 367 Wis.2d 50, 875 N.W.2d 596. And, there can be no doubt that the court in Newhouse III intended the phrase "is not final" to mean the following: has not yet been finally resolved through the appellate process.
*231 ¶39 The passage we quote from Newhouse III appears to broadly reject the notion that the duty to defend ends with a circuit court no coverage determination that may be reversed on appeal, because such a decision "is not final" and may yet result in an obligation by the insurer to indemnify . And, assuming that this rule may be derived from Newhouse III , it is difficult for us to see how the duty to defend could end with a circuit court merits determination that may be reversed on appeal and may yet result in an obligation by the insurer to indemnify .
¶40 Moreover, even if we were to consider this passage in Newhouse III to be distinguishable, we would reach the same conclusion. This is based in part on persuasive authority. As it happens, this same authority that we now conclude is persuasive was featured in an opinion of this court that addressed a related question: Does an insurer's duty to defend end when all arguably covered claims are dismissed as a result of a valid settlement? See Bodart , 343 Wis.2d 418, ¶13, 819 N.W.2d 298. We answered that question yes in Bodart , based on the proposition that a valid settlement of a claim followed by its dismissal is a final resolution of the claim. See id. , ¶¶13-24. Notably, in settling a claim, a plaintiff expressly and voluntarily drops the claim. Thus, "once all covered (and arguably covered) claims have been settled and dismissed, there are no longer any allegations in the complaint that are arguably covered, no matter how liberally construed." Id. , ¶17. We cautioned that a settlement might not end the duty to defend, if the insurer's withdrawal from the case would prejudice the defense of remaining, non-covered claims, or if the insurer entered a purported settlement in bad faith, but otherwise insurers should *232 be able to treat claims dismissed based on valid settlements as finally put to rest. See id. , ¶22.
¶41 To clarify, Bodart does not dictate our decision in this appeal. Bodart dealt with the distinct circumstance in which all arguably covered claims are dismissed based on a valid settlement. However, in reaching our holding in Bodart , we relied to a large degree on persuasive authority that does address the issue presented in this appeal. See id. , ¶13 (citing Meadowbrook, Inc. v. Tower Ins. Co. , 559 N.W.2d 411, 417 (Minn. 1997) ; LEE R. RUSS & THOMAS F. SEGALLA, 9 COUCH ON INSURANCE § 200:49 (3d ed. 2005) ). Turning to the facts here, we consider these same sources, and others, to be persuasive on the separate issue of whether the duty to defend continues until the arguable obligation to indemnify is extinguished through the appellate process, as opposed to being extinguished through dismissal following a valid settlement.
¶42 The reasoning on this issue found in Meadowbrook , which we now quote, aligns with our reading of the statements in Newhouse III addressing claims that may yet result in an obligation by the insurer to indemnify:
An insurer's duty to defend claims arguably within the policy's coverage extends until it can be concluded as a matter of law that there is no basis on which the insurer may be obligated to indemnify the insured. Woida v. North Star Mut. Ins. Co. , 306 N.W.2d 570, 574 (Minn. 1981) [ ("When it can be concluded as a matter of law that there is no basis upon *559 which an insurer may be obligated to indemnify the insured, the insurer is relieved of its duty to defend.") (citing 7 C. J. Appleman, INSURANCE LAW AND PRACTICE § 4684.01 (Supp. 1980) ]. As a result, the duty to defend extends *233 through the appellate process. See 7C John A. Appleman, INSURANCE LAW AND PRACTICE § 4688, at 200 (Berdal ed. 1979) ("The insurer's obligation to defend the suit against the insured does not end with a successful verdict in the trial court but includes the defense of any appeals that the claimant may make."); see also City of West Haven v. Commercial Union Ins. Co. , 894 F.2d 540, 545-46 (2nd Cir. 1990) [ (duty to defend "ordinarily continues through prosecution of appeals" and lasts "so long as [the insurer] might be held liable.") (citing Appleman, § 4684.01) ].
Meadowbrook , 559 N.W.2d at 416 ; see also STEVEN PITT, DANIEL MALDONADO, JOSHUA D. ROGERS, & JORDAN R. PLITT, 14 COUCH ON INSURANCE § 200:49 (June 2018 Update) ("insurer's duty to defend continues through the appellate process until it can be concluded as a matter of law that there is no basis on which the insurer may be obligated to indemnify the insured").[7]
*234 ¶43 In additional persuasive authority cited by Kayser, Hawaii's supreme court has explained how the reasoning of Judge Learned Hand applies here. See Commerce & Indus. Ins. Co. v. Bank of Hawaii , 73 Haw. 322, 832 P.2d 733, 736 (Haw. 1992) (quoting Lee v. Aetna Cas. & Sur. Co. , 178 F.2d 750, 753 (2d Cir. 1949) (Hand, J.)). If the facts alleged in the operative complaint " 'would have supported a recovery covered by the policy,' "
*560 the insurer has a duty to defend " 'until it could confine the claim to a recovery that the policy did not cover.' " Id. (quoting Lee , 178 F.2d at 753 ). Here, Regent has not yet "confined" the case entirely to Count Four, which the circuit court ruled does not carry an arguable obligation to indemnify, because Count One, which the court ruled does have such arguable obligation, may be revived on appeal.
*235 ¶44 We conclude that the definition of the duty to defend stated in this persuasive authority is consistent with Wisconsin's unqualified reliance on the four-corners test and the entire-suit rule, as well as consistent with our understanding of statements in Newhouse III . Our supreme court has observed that the duty to defend is triggered by "the possibility that money damages might be awarded," that the insurer may have an obligation to indemnify. See School Dist. of Shorewood v. Wausau Ins. Cos. , 170 Wis.2d 347, 366, 488 N.W.2d 82 (1992) (emphasis added), rejected on other grounds by Johnson Controls, Inc. v. Employers Ins. of Wausau , 2003 WI 108, 264 Wis.2d 60, 665 N.W.2d 257 ; see also Olson , 338 Wis.2d 215, ¶29, 809 N.W.2d 1 (insurer has duty to defend " 'only if it could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint' ") (emphasis added) (quoting Grieb , 33 Wis.2d at 558, 148 N.W.2d 103 ).
¶45 Putting to the side its undeveloped policy-language-based argument, Regent does not dispute that the following is a possible chain of future events in this lawsuit, following disposition of Count Four on the merits in the circuit court, regardless of the specific disposition of Count Four: (1) Anderson appeals partial summary judgment of Count One; (2) Anderson prevails on appeal; (3) following remand, Anderson prevails on Count One; and, (4) as a result, Regent is obligated to indemnify Kayser based on the claim in Count One.
¶46 In addition, as Kayser points out, our supreme court's "unequivocal[ ] hold[ing] that there is no exception to the four-corners rule in duty to defend cases in Wisconsin," see Water Well , 369 Wis.2d 607, ¶24, 881 N.W.2d 285, supports Kayser's position that the duty to defend is defined solely by the complaint and the policy, and not *236 by merits rulings that may not survive appeal. The operative complaint here includes Count One, which may be revived in an appeal by Anderson. As we have noted, the duty to defend, unlike the more narrow obligation to indemnify, depends on the nature, not the merits, of a claim, and the insured enjoys the benefits of the insurer's duty to defend until it is finally resolved that no indemnity will be required on any claim.
¶47 Before explaining why we reject specific arguments made by Regent, we acknowledge that its overarching argument gives us pause for the same reason that it appealed to the circuit court. As Regent emphasizes, the only claim going to trial is one on which Kayser agrees Regent could have no obligation to indemnify. Thus, it may appear counterintuitive that Regent could be on the hook to provide a defense when it does not face any liability on the claim being tried. If we were writing on a blank slate, with only the language of the insurance policy to guide us, we might affirm. However, we are guided by Newhouse III , as well as the reasoning and public policy determinations in such cases as School District of Shorewood and Water Well , in which our supreme court has repeatedly drawn bright lines in favor of imposing a duty to defend based on public policy considerations. And, to repeat, this guidance includes the rule that we are to resolve any doubt regarding Regent's duty to defend in favor of Kayser.
*561 See Bodart , 343 Wis.2d 418, ¶17, 819 N.W.2d 298. Thus, it is significant that Regent fails to persuade us that there is no doubt that it does not have a continuing duty to defend Kayser under these circumstances.
¶48 We turn to Regent's specific arguments not already addressed above. Regent makes a series of assertions that ignore the facts here. This includes Regent's mistaken assertion that it can have no obligation *237 to indemnify Kayser even if Anderson prevails at trial on the merits of Count Four. As we have explained, whether or not Anderson prevails at the upcoming trial, Regent can have an obligation to indemnify, under the possible sequence of events that we described above in ¶45. Regent also suggests that all arguably covered claims in this suit have "drop[ped] out." Anderson has not "dropped" the claim in Count One, as she expressly and voluntarily would have done if the claim had been validly settled.
¶49 Regent relies on the rule that, if a circuit court resolves all arguable indemnification issues in favor of the insurer, this establishes that "coverage is no longer open to debate," and brings to an end the insurer's duty to defend. Baumann v. Elliott , 2005 WI App 186, ¶¶9-10, 286 Wis.2d 667, 704 N.W.2d 361 (no duty to defend if no obligation to indemnify). The critical fact here, however, is that, unlike in Baumann , the circuit court ruled that an obligation to indemnify on the claim in Count One is, in the words of Baumann , "open to debate." Thus, Baumann 's holding that "[a]n insurer need not defend a suit in which it has no economic interest" is consistent with Regent's continuing duty to defend here. See id. , ¶10. This is because Regent has an economic interest in final resolution of its arguable obligation to indemnify Kayser if Anderson prevails on the claim in Count One, which may be revived through appeal. The result is the same when Regent quotes the following proposition: "The insurer's duty to continue to defend is contingent upon the court's determination that the insured has coverage if the plaintiff proves his case."
*238 Sustache , 311 Wis.2d 548, ¶29, 751 N.W.2d 845.[8] To repeat, the circuit court here ruled that there is an arguable obligation to indemnify in this suit, albeit on a claim that the court has dismissed on the merits in a nonfinal ruling.[9]
*562 *239 ¶50 Further, this rule from Baumann and Sustache undercuts a broad argument that Regent makes that, if Kayser were correct about the application of the four-corners test to the circumstances here, "then no insurer would ever be able to dispose of the duty to defend." However, as Baumann illustrates, if a circuit court determines that an insurer has no arguable indemnification liability on any claim in the complaint, the insurer "has no economic interest" and can be dismissed on the ground that it has no duty to defend, regardless of the extent of the insured's exposure. See Baumann , 286 Wis.2d 667, ¶¶9-10, 704 N.W.2d 361. This is consistent with the purposes behind our supreme court's recommended, but non-mandatory, procedures for insurers to request bifurcation of the issues, resolving arguable indemnification obligations before reaching the merits stage. See Liebovich v. Minnesota Ins. Co ., 2008 WI 75, ¶¶55-56, 310 Wis.2d 751, 751 N.W.2d 764 ; Baumann , 286 Wis.2d 667, ¶8, 704 N.W.2d 361 ; see also WIS. STAT. § 803.04(2)(b) (addressing procedures for addressing "cross issues" between insurers and insured, including allowing for "separate trials on the issue of liability to the plaintiff or other party seeking affirmative relief and on the issue of whether the insurance policy in question affords coverage").
¶51 For reasons we have explained, when the arguable obligation to indemnify on all claims is eliminated, this ends the insurer's duty to defend, provided that the time for taking an appeal from the circuit court adjudication has expired, any appeal has been resolved, or the plaintiff has relinquished its appeal *240 rights. As the court explains in Meadowbrook , the rule we apply today does not create an " 'interminable' " duty to defend, because it " 'will end if and when it is shown unequivocally that the damages alleged would not be covered by the policy.' " Meadowbrook , 559 N.W.2d at 415 n.10 (quoting Sturges Mfg. Co. v. Utica Mut. Ins. Co. , 37 N.Y.2d 69, 371 N.Y.S.2d 444, 332 N.E.2d 319, 323 (N.Y. 1975) ).
¶52 Along similar lines, again objecting to an allegedly limitless duty to defend, Regent contends that it could not have a duty to defend through the upcoming trial, because it "has no stake in the outcome" of the trial. This contention fails to come to grips with the four-corners test and the entire-suit rule, which as we have explained obligate Regent to defend Kayser until all arguably covered claims are extinguished. These rules already require that insurers will spend money, in some case large sums, to provide defenses against claims in which the insurers have no "stake." For example, assume that, out of many claims in a suit against an insured, the plaintiff alleges only one for which there is arguable coverage. Assume further that the value of indemnification obligation on the single claim would be small if the plaintiff prevails on it. At the trial on all claims, the insurer might spend a large sum on defense, despite facing negligible indemnification exposure. This would be a function of the joint operation of the four-corners test and the entire-suit rule, which are firmly established in Wisconsin law.
*563 ¶53 Regent argues that requiring it to defend Kayser, other than in connection with an appeal of the circuit court's Count One merits decision and any subsequent litigation on Count One, "would encourage plaintiffs and defendants to collude." Regent cites the following as a hypothetical example. A plaintiff includes a meritless negligence claim in a complaint for *241 the sole purpose of keeping a "deep pocket" insurer in the suit, even though the only potential liability in the hypothetical case "is based on an intentional tort [that is] barred under the [insurance] policy and Wisconsin law." However, the four-corners test and the entire-suit rule already create such circumstances. That is, there is already an incentive in some circumstances under the four-corners test and the entire-suit rule for a plaintiff to include a claim for which there is an arguable obligation to indemnify that might not otherwise be brought. Regent fails to persuade us, based on its incentive argument, that the general rule that the duty continues until it is extinguished is a matter of law that we apply is inconsistent with Wisconsin case law. We may not ignore public policy considerations as they have been expressed in this context by our supreme court.
¶54 Regent repeatedly asserts that insurers have only an "initial duty to defend," emphasizing the word "initial." Regent appears not to recognize that, if anything, case law references to "initial" determinations of the duty to defend, see Sustache , 311 Wis.2d 548, ¶28, 751 N.W.2d 845 (referring to "the initial duty to defend stage of the proceedings"), support Kayser's position. As we have explained, an insurer's contractual duty to defend is not contingent on the outcome of a merits determination, whether through trial or summary judgment. Instead, the duty is determined based on the content of the operative complaint when compared with pertinent policy language. That is, the duty to defend is triggered by a plaintiff's claim that would, if proven, arguably obligate the insurer to indemnify the insured. In contrast, the obligation to indemnify is not triggered until the insured's liability has been established.
*242 ¶55 Regent objects that the duty to defend is "costly." This does not add to the analysis. The issue is whether the insurer or the insured must bear the costs of often expensive defenses that both insured and insurer naturally want to avoid. For the reasons we have explained, Regent has assumed the duty, for a premium, to defend the entire suit against Kayser, based on a claim in this suit for which the circuit court has ruled there is an arguable obligation to indemnify. To repeat, aside from its undeveloped policy-language-based argument, Regent does not now contest the court's ruling that Regent has an arguable obligation to indemnify Kayser if Anderson eventually prevails on Count One.
CONCLUSION
¶56 For these reasons, we reverse the order of the circuit court.
By the Court .-Order reversed.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

There is a purported Count Five "claim" for punitive damages, but this is not a cause of action. See Brown v. Maxey , 124 Wis.2d 426, 431, 369 N.W.2d 677 (1985) (punitive damages are not a cause of action but a remedy).

We decline Kayser's invitation to reject Regent's policy-language-based argument on the ground of forfeiture. Kayser alleges that Regent failed to make this argument to the circuit court and therefore forfeited it. It is true that, under the general forfeiture rule, an appellant challenging a circuit court ruling must generally give the circuit court an opportunity to address an issue before it is raised on appeal. See State v. Rogers , 196 Wis.2d 817, 827-29, 539 N.W.2d 897 (Ct. App. 1995) (appellate courts "will not ... blindside trial courts with reversals based on theories which did not originate in their forum"). However, here respondent Regent allegedly makes an argument for the first time on appeal, in defense of a circuit court ruling. As a general rule we " 'may sustain a lower court's holding on a theory or on reasoning not presented to the [circuit] court.' " See Bauer v. Murphy , 191 Wis.2d 517, 526, 530 N.W.2d 1 (Ct. App. 1995) (quoted source and emphasis omitted).

This contrasts with a conclusion that we reached, based on the different facts, in Society Ins. v. Bodart , 2012 WI App 75, 343 Wis.2d 418, 819 N.W.2d 298, a case that we discuss further below. In Bodart , we concluded that a reasonable insured considering duty-to-defend policy language of the type at issue in this case would understand that the insurer "has no duty to defend an insured in a suit once it has become clear"-clear, that is, due to dismissal based on valid settlement of all arguably covered claims-"that the suit no longer involves any claim that is even arguably covered." Id. , ¶12. We conclude that dismissal based on valid settlement extinguishes an insurer's arguable obligation to indemnify as a matter of law, but in contrast partial summary judgment on the merits by a circuit court does not.

The parties do not discuss, and this case does not specifically present, the issue of whether the fact that circuit courts may generally reconsider rulings before entering final orders and judgments is another consideration that weighs in favor of a continuing duty to defend, in contrast to the fact that circuit court decisions are generally subject to review on appeal. We do not address the significance in this context of potential circuit court reconsideration.

As this court pointed out in Newhouse II , the decision of the circuit court to hold a merits trial while the coverage appeal was pending was made before our supreme court explained that an insurer "must seek bifurcation of the coverage and [merits] issues and must also seek a stay of the latter pending resolution of the former." Newhouse v. Citizens Sec. Mut. Ins. Co. , 170 Wis.2d 456, 463 n.1, 489 N.W.2d 639 (Ct. App. 1992) (Newhouse II ) (citing Elliott v. Donahue , 169 Wis.2d 310, 485 N.W.2d 403 (1992) ), aff'd in part, rev'd in part by 176 Wis.2d 824, 501 N.W.2d 1 (1993) (Newhouse III ).

Additional authority cited by Kayser that we consider to be persuasive includes the following: Commerce & Indus. Ins. Co. v. Bank of Hawaii , 73 Haw. 322, 832 P.2d 733, 737 (Haw. 1992) ("The duty to defend continues until the potential for liability is finally resolved," which includes expiration of any applicable appeals period); Klamath Pac. Corp. v. Reliance Ins. Co. , 151 Or.App. 405, 950 P.2d 909, 916 (Or. App. 1997) ("an intermediate order from a trial court dismissing a claim is not a final resolution of that claim," and "does not relieve an insurer of its duty to defend"), adhered to as modified on reconsideration by 955 P.2d 340 (Or. App. 1998) ; City of Sandusky, Ohio v. Coregis Ins. Co. , 192 Fed. Appx. 355, 362 (6th Cir. 2006) (relying in part on Meadowbrook, Inc. v. Tower Ins. Co. , 559 N.W.2d 411, (Minn. 1997) and Commerce & Indus. Ins. Co. ; continuing duty to defend when covered claims have been dismissed in non-final summary judgment order); and Wells' Dairy, Inc. v. Travelers Indem. Co. of Ill. , 336 F.Supp.2d 906, 911-12 (N.D. Iowa 2004) (concluding that Iowa Supreme Court would follow Meadowbrook for the proposition that the duty to defend extends until "all arguably covered claims [have] been completely extinguished-in other words, when no further rights to appeal those arguably covered claims exist").
In the face of this persuasive authority, which Kayser cites, Regent fails to develop an argument based on purported contrary authority. Regent may intend to rely on Lockhart v. Allstate Ins. Co. , 119 Ariz. 150, 579 P.2d 1120 (Ariz. Ct. App. 1978), disapproved on other grounds by Fire Ins. Exchange v. Berray , 143 Ariz. 361, 694 P.2d 191 (Ariz. 1984), but if so we fail to discern why. The appellate court in Lockhart determined that an insurer would have no duty to defend at a partial retrial on a claim for which the purported insured could point to no arguable obligation to indemnify. See Lockhart , 579 P.2d at 1123. This is consistent with the rule we discuss in the text that there is no duty to defend when there could be no duty to indemnify. See infra , ¶¶49-50.
Regarding the substance of the persuasive authority we cite, Regent makes only weak attempts to distinguish it. For example, Regent attempts to distinguish cases from other jurisdictions based on civil procedure rules involving the right to appeal that differ from Wisconsin's rules. We fail to see how these procedural differences undermine the reasoning that we find persuasive in the cases from the other jurisdictions. Moreover, the holdings of courts from other jurisdictions appear to find consistent support in secondary sources that we also cite.

As sometimes occurs when parties use the term "coverage" loosely in the insurance context, Regent confuses the duty to defend with the obligation to indemnify in relying on discussion in Sustache v. American Family Mutual Insurance Co. , 2008 WI 87, ¶¶27-29, 311 Wis.2d 548, 751 N.W.2d 845. In the Sustache discussion cited by Regent, the court explains that when a circuit court holds a hearing to address the scope of the insurer's obligation to indemnify (a "coverage hearing"), the court may consider evidence presented by the parties and need not rely on the allegations in the complaint against the insured. Id. This passage provides no support for Regent's arguments. The passage explicitly distinguishes between the duty to defend (governed by the four-corners test) and the obligation to indemnify (which may be addressed based on evidence adduced at a coverage hearing). See also Talley v. Mustafa , 2018 WI 47, ¶21, 381 Wis.2d 393, 911 N.W.2d 55 (overruling Doyle v. Engelke , 219 Wis.2d 277, 580 N.W.2d 245 (1998), on the ground that the court in Doyle used the four-corners test, which defines the duty to defend, to resolve a "coverage" issue). The passage in Sustache is merely an expression of a proposition that we have already explained: there is no duty to defend a lawsuit when a circuit court determines that there is no arguable obligation to indemnify based on any theory of liability reflected in the complaint.

We recognize potential tension between our interpretation of Newhouse III (the duty to defend continues so long as claims may yet result in an obligation by the insurer to indemnify) and the rule stated in Baumann v. Elliott , 2005 WI App 186, ¶10, 286 Wis.2d 667, 704 N.W.2d 361 (the duty to defend ends when a circuit court decides there is "no coverage," that is, no duty to indemnify on any alleged claim). However, it should be clear that we do not consider either Newhouse III or Baumann to be controlling on the novel issue presented here. In effect, Baumann carves out an exception to the general rule stated in Newhouse III , to address the circumstance in which a circuit court has made "no coverage" decisions as to all claims. In that particular circumstance, which is not present here, the duty ends. In this case, we are guided by the general rule.